**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTIN FLEISHER AND ANDREA BIERSTEIN, on behalf of themselves and all others similarly situated,<br><br>                    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    *Defendant*. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

**INTRODUCTION**

1.      This is a class action lawsuit under the Little Tucker Act to recover overpayment interest owed to members of the proposed class.

2.      In 2019, Congress enacted a law mandating that the Internal Revenue Service ("**IRS**") provide tax relief during federally declared disasters. Prior to 2019, the Department of the Treasury ("**Treasury**") was given sole discretion to decide whether to provide tax relief in connection with federally declared disasters. This led to uncertainty as to whether and what forms of relief would be provided for a given disaster. With the 2019 amendment to 26 U.S.C. § 7508A (the "**2019 Amendment**"), Congress changed that and provided for mandatory tax relief for taxpayers residing within any area for which a disaster is declared pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act (the "**Stafford Act**").

3.      Among the forms of tax relief provided for by 26 U.S.C. § 7508A is the suspension of the statutory exemptions that permit the IRS to withhold interest due to taxpayers on tax

overpayments. Due to the complexity of the tax code, the risk of penalties for underpayment, and the availability of refundable tax credits, millions of Americans overpay their federal income taxes each year and subsequently receive refunds. Pursuant to 26 U.S.C. § 6611(a), the default rule is that the IRS owes taxpayers interest on overpayments because the government has had use of that money. This is the corollary to the rule that taxpayers who underpay their taxes owe interest to the IRS. *See* 26 U.S.C. § 6601.

4.    But there are several broad exemptions to 26 U.S.C. § 6611(a)'s default rule that result in the IRS *not* paying overpayment interest to most taxpayers. *See* 26 U.S.C. § 6611(b)(3), (e) (collectively, the "**Interest-Limiting Exemptions**"). One form of tax relief provided by the 2019 Amendment to 26 U.S.C. § 7508A is the suspension of those Interest-Limiting Exemptions during federally declared disasters for taxpayers residing in the disaster area.

5.    Despite the unambiguous language of the 2019 Amendment, the IRS chose to ignore Congress's mandate in connection with the COVID-19 pandemic. In spring 2020, President Trump declared, pursuant to the Stafford Act, that the COVID-19 pandemic constituted a major disaster in New York, all other states and territories, and the District of Columbia, "beginning on January 20, 2020, and continuing." Subsequent amendments to those declarations fixed May 11, 2023 as the end of "the incident period for all COVID-19 major disaster declarations." Pursuant to the 2019 Amendment, this should have triggered mandatory tax relief—including the elimination of the Interest-Limiting Exemptions—for all U.S.-based taxpayers. But the IRS refused to provide such relief to all such taxpayers. Instead, the IRS granted limited *discretionary* extensions of individual income tax filing deadlines to certain taxpayers in 2020 (making returns due on July 15, rather than April 15) and in 2021 (making returns due on May 17, rather than April 15) and, for at least some of those taxpayers, paid overpayment interest without regard to the

Interest-Limiting Exemptions. The IRS, however, declined to provide any of the mandatory relief required by the 2019 Amendment, and continued to rely on the Interest-Limiting Exemptions to refuse to pay other taxpayers interest on their overpayments during the COVID-19 disaster period.

6.     To justify its refusal to recognize the mandatory tax relief required by the 2019 Amendment, the Treasury finalized a regulation on June 11, 2021 that, over numerous objections, essentially nullified the 2019 Amendment. In *Abdo v. Commissioner*, 162 T.C. 148 (2024), the United States Tax Court held that regulation invalid as contrary to the plain language of the 2019 Amendment and ruled that the COVID-19 disaster declarations triggered an automatic extension of filing deadlines pursuant to 26 U.S.C. § 7508A(d), effective January 20, 2020. And in a subsequent case, the United States Court of Federal Claims confirmed that, "under the 2019 amendment, the automatic, or mandatory, extension period began on January 20, 2020, and ended on July 10, 2023, 60 days after the [COVID-19] emergency declaration's latest incident date." *Kwong v. United States*, No. 23-267, 2025 WL 3280835, at \*5 (Fed. Cl. Nov. 25, 2025).

7.     Under the plain language of 26 U.S.C. § 7508A, the government owes overpayment interest to all qualifying taxpayers who were entitled to the benefits of the mandatory disaster tolling period that ran from January 20, 2020 through July 10, 2023.

8.     Plaintiffs, on behalf of themselves and all similarly situated taxpayers, bring this action pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2), seeking payment of the overpayment interest that the government owes pursuant to 26 U.S.C. §§ 6611 and 7508A.

### The Parties

9.     Plaintiffs Martin Fleisher and Andrea Bierstein are residents of New York married to each other. At all relevant times, they resided in New York City, New York. They filed a joint federal income tax return on October 7, 2022 (for tax year 2021) and received a refund on November 17, 2022 from the IRS with respect to that return. That joint tax return reported a

principal address located in New York City, New York. The IRS did not pay the interest due on that refund to Plaintiffs pursuant to 26 U.S.C. § 6611(a).

10.     Plaintiffs' unpaid interest with respect to their 2021 federal income tax overpayment does not exceed $10,000, including compounding.

11.     The Defendant is the United States of America. The Treasury and the IRS, one of the Treasury's bureaus, are part of the United States of America.

### JURISDICTION AND VENUE

12.     This action for payment of overpayment interest arises under 26 U.S.C. § 6611 and 28 U.S.C. § 1346(a)(2), by which the Defendant has waived its sovereign immunity.

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1346(a)(2). Plaintiffs and each putative class member have one or more claims against the United States for unpaid interest on overpayments of federal tax, with no single claim exceeding $10,000.

14.     Exhaustion of administrative remedies, including the filing of pre-suit notice to the IRS, is not required because this is an action for overpayment interest, and not an action for "any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected[.]" 26 U.S.C. § 7422(a); *see Pfizer Inc. v. United States*, 939 F.3d 173, 177 (2d Cir. 2019); IRS Procedure and Administration Deskbook at 38 ("In District Courts and the Court of Federal Claims, overpayment interest may be raised as Tucker Act claims for additional overpayment interest. Taxpayers are not required to file a claim with the Service prior to filing a complaint in court.").[1]

---

[1] *See also Charleston Area Med. Ctr., Inc. v. United States*, 138 Fed. Cl. 626, 628 n.1 (2018) ("Plaintiffs' suit does not seek the recovery of taxes alleged to have been wrongfully paid; rather it seeks recovery of additional interest on the tax refund the IRS has found Plaintiffs entitled to receive. The administrative exhaustion requirement of I.R.C. § 7422(a) [governing tax-refund suits] is therefore inapplicable."); *Amoco*

15.    This Court has personal jurisdiction over all parties, and venue is proper under 28 U.S.C. § 1402(a) because Plaintiffs reside in this District.

16.    This complaint is filed within the time period specified in 28 U.S.C. § 2401(a).

## STATUTORY BACKGROUND

**A. The tax code requires the government to pay overpayment interest unless the Interest-Limiting Exemptions apply**

17.    If a taxpayer pays more federal tax[2] than is owed, the United States must, after applying any required offset, refund the overpayment or credit it against a tax liability of the taxpayer. 26 U.S.C. § 6402(a); *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947).

18.    In either case, the United States typically must include interest on the amount of overpayment. 26 U.S.C. § 6611(a) states: "Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621." This is the corollary to the rule that taxpayers who underpay their taxes owe interest to the federal government. *See* 26 U.S.C. § 6601.

19.    Overpayment interest ordinarily starts accruing on the later of: (i) the date a taxpayer's payments exceed the taxpayer's liability; or (ii) the taxpayer's payment deadline, determined without regard to extensions. *See* 26 U.S.C. §§ 6611(b)(1), (2), 6513; Treasury Regulations ("**Treas. Reg.**") § 301.6611-1(b), (d).[3] Disregarded extensions include, for example, the accommodation for Saturdays, Sundays and legal holidays under 26 U.S.C. § 7503 and the tolling of deadlines pursuant to 26 U.S.C. § 7508A(a) and (d), discussed below.

---

*Prod. Co. v. United States*, 1988 U.S. Dist. LEXIS 954, *13–*15 (N.D. Ill. 1988); *Alexander Proudfoot Co. v. United States*, 197 Ct. Cl. 219, 229 (1972).

[2] For simplicity, all references to tax are to federal tax and all references to tax returns are to federal tax returns.

[3] All Treasury Regulations are found in Title 26 of the Code of Federal Regulations. Thus the regulations cited here are found at 26 C.F.R. § 301.6611-1.

20.    Notwithstanding the default rule that the government must pay overpayment interest, several Interest-Limiting Exemptions limit that obligation: (a) the "**Late Filing Rule**"; (b) the "**45-Day Rules**"; and (c) the "**180-Day Rules**."

21.    The Late Filing Rule is set forth at 26 U.S.C. § 6611(b)(3) and provides that if a person files a tax return late, no overpayment interest accrues until the tax return is filed.

22.    The 45-Day Rules are set forth in 26 U.S.C. § 6611(e)(1)–(3) and provide that:

o    no interest is owed on an overpayment that is refunded either within 45 days after the relevant tax return is filed or within 45 days after the tax return's filing deadline, determined without regard to extensions, *see* 26 U.S.C. § 6611(e)(1);

o    no interest accrues on an overpayment after the date that a refund claim is filed if the overpayment is refunded within 45 days thereafter, *see* 26 U.S.C. § 6611(e)(2); and

o    any interest accrual on an overpayment is reduced by 45 days if the overpayment arises from an adjustment initiated by the IRS, *see* 26 U.S.C. § 6611(e)(3).

23.    The 180-Day Rules are analogues of the 45-Day Rules that apply with respect to overpayments of tax withheld from certain payments to foreign persons, and substitute 180-day periods for the 45-day periods. *See* 26 U.S.C. § 6611(e)(4).

**B.    The Interest-Limiting Exemptions do not apply to taxpayers who timely file a return that has a federally declared disaster-delayed deadline**

24.    The Interest-Limiting Exemptions, however, do not apply to taxpayers who timely file tax returns and whose filing deadlines have been tolled pursuant to 26 U.S.C. § 7508, which addresses combat zone deployment, or 26 U.S.C. § 7508A, which addresses federally declared disasters.

25.    26 U.S.C. § 7508, entitled "Time for performing certain acts postponed by reason of service in combat zone or contingency operation," provides, in relevant part, as follows:

(a) Time to be disregarded. In the case of an individual serving in the Armed Forces of the United States, or serving in support of such Armed Forces, in an area designated by the President of the United States by Executive order as a "combat zone" for purposes of section 112, or when deployed outside the United States away from the individual's permanent duty station while participating in an operation designated by the Secretary of Defense as a contingency operation (as defined in section 101(a)(13) of title 10, United States Code) or which became such a contingency operation by operation of law, at any time during the period designated by the President by Executive order as the period of combatant activities in such zone for purposes of such section or at any time during the period of such contingency operation, or hospitalized as a result of injury received while serving in such an area or operation during such time, the period of service in such area or operation, plus the period of continuous qualified hospitalization attributable to such injury, and the next 180 days thereafter, shall be disregarded in determining, under the internal revenue laws, in respect of any tax liability (including any interest, penalty, additional amount, or addition to the tax) of such individual—

    (1) Whether any of the following acts was performed within the time prescribed therefor:

        (A) Filing any return of income, estate, gift, employment, or excise tax;

        (B) Payment of any income, estate, gift, employment, or excise tax or any installment thereof or of any other liability to the United States in respect thereof;

        (C) Filing a petition with the Tax Court, or filing a notice of appeal from a decision of the Tax Court;

        (D) Allowance of a credit or refund of any tax;

        (E) Filing a claim for credit or refund of any tax;

        (F) Bringing suit upon any such claim for credit or refund;

        (G) Assessment of any tax;

        (H) Giving or making any notice or demand for the payment of any tax, or with respect to any liability to the United States in respect of any tax;

        (I) Collection, by the Secretary, by levy or otherwise, of the amount of any liability in respect of any tax;

        (J) Bringing suit by the United States, or any officer on its behalf, in respect of any liability in respect of any tax or in respect of any erroneous refund; and

        (K) Any other act required or permitted under the internal revenue laws specified by the Secretary.

    (2) The amount of any credit or refund; and

    (3) Any certification of a seriously delinquent tax debt under section 7345.

**(b) Special rule for overpayments**

    **(1) In general**

    **Subsection (a) shall not apply for purposes of determining the amount of interest on any overpayment of tax.**

    **(2) Special rules**

> **If an individual is entitled to the benefits of subsection (a) with respect to any return and such return is timely filed (determined after the application of such subsection), subsections (b)(3) and (e) of section 6611 shall not apply.**

26. As shown in bold above, subsection (b) of 26 U.S.C. § 7508 suspends the Interest-Limiting Exemptions (all of which are codified within subsections (b)(3) and (e) of section 6611) for servicemember or servicemember's spouse who qualifies under 26 U.S.C. § 7508 for tolling with respect to a return and timely files that return.

27. 26 U.S.C. § 7508A, previously titled "Authority to postpone certain deadlines by reason of Presidentially declared disaster or terroristic or military actions,"[4] was modeled after Section 7508. Both statutes specify periods to "be disregarded in determining, under the internal revenue laws, in respect of any tax liability," the length of time permitted for various acts, such as the filing of a tax return. And both Sections call for the suspension of Interest-Limiting Exemptions whenever a taxpayer is entitled to such an extension. Following the 2019 Amendment, Section 7508A provided as follows:

> (a) In general.—In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster (as defined by section 165(i)(5)(A))[5] or a terroristic or military action (as defined in section 692(c)(2)), the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—
>> (1) whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor (determined without regard to extension under any other provision of this subtitle for periods after the date (determined by the Secretary) of such disaster or action),
>> (2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and

---

[4] An amendment in November 2021 changed the title of Section 7508A to "Authority to postpone certain deadlines by reason of Federally declared disaster, significant fire, or terroristic or military actions," which is the title it still has today. Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80504(b)(1), 135 Stat. 429, 1337 (Nov. 15, 2021).

[5] This cross-referenced statute provides: "The term 'Federally declared disaster' means any disaster subsequently determined by the President of the United States to warrant assistance by the Federal Government under the Robert T. Stafford Disaster Relief and Emergency Assistance Act." 26 U.S.C. § 165(i)(5).

(3) the amount of any credit or refund.

. . .

(c) **Special rules for overpayments.—The rules of section 7508(b) shall apply for purposes of this section.**

(d) **Mandatory 60-day extension.—**

> (1) **In general.—In the case of any qualified taxpayer, the period—**
>> **(A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to in paragraph (2) relates, and**
>> **(B) ending on the date which is 60 days after the latest incident date so specified,**
>
> **shall be disregarded in the same manner as a period specified under subsection (a).**
>
> (2) Qualified taxpayer.—For purposes of this subsection, the term "qualified taxpayer" means—
>> (A) any individual whose principal residence (for purposes of section 1033(h)(4)) is located in a disaster area,
>> (B) any taxpayer if the taxpayer's principal place of business (other than the business of performing services as an employee) is located in a disaster area,
>>
>> . . .
>
> (3) Disaster area.—For purposes of this subsection, the term "disaster area" has the meaning given such term under subparagraph (B) of section 165(i)(5)[6] with respect to a Federally declared disaster (as defined in subparagraph (A) of such section).

26 U.S.C. § 7508A (2019).

28.    As can be seen, following the 2019 Amendment, Section 7508A provides for both discretionary and mandatory tolling. Subsection (a) of Section 7508A provides authority for tolling up to one year at the *discretion* of the Treasury, while subsection (d) provides for a *mandatory* tolling for all qualified taxpayers from the "earliest incident date" until 60 days following the "latest incident date." The following chart from the United States Tax Court's decision in *Abdo* summarizes the key differences between discretionary tolling (under subsection (a)) and mandatory tolling (under subsection (d)):

---

[6] This cross-referenced statute provides: "The term 'disaster area' means the area so determined to warrant such assistance." 26 U.S.C. § 165(i)(5).

| Aspect | Subsection (a) | [Subsection] (d)(1) |
|---|---|---|
| *Whether* to disregard | Discretionary: "the Secretary **may** specify a period" | Automatic: "the period . . . **shall** be disregarded" |
| *How long* to disregard | Discretionary: "**up to** 1 year" | Automatic: "**beginning on** the earliest incident [date*] . . . and **ending on** the date which is 60 days after the latest incident date" |
| *For whom* to disregard | Discretionary: "a taxpayer **determined by the Secretary** to be affected" | Automatic: "**any** qualified taxpayer" |
| *For what purposes* to disregard | Discretionary: "a period . . . that **may** be disregarded in determining . . . any of the acts described in paragraph (1) of section 7508(a)[**] . . . the amount of any interest, penalty, additional amount, or addition to tax . . . and the amount of any credit or refund" | Automatic: "the period . . . *shall*[***] be disregarded in the same manner as a period specified under subsection (a)" |

*Abdo*, 162 T.C. 148, at 161.

29.    Whenever a taxpayer is entitled to disaster-related tolling (whether such tolling is mandatory or discretionary) with respect to a return, subsection (c) of Section 7508A—entitled "Special Rules for Overpayments"—suspends the Interest-Limiting Exemptions in the same manner as Section 7508 (the combat zone statute discussed above). Subsection (c) provides: "The rules of section 7508(b) shall apply for purposes of this section." 26 U.S.C. § 7508A(c) (2019). The IRS's manual confirms that "where a disaster-related postponement of the filing deadline exists, the IRS is required by law to pay interest on any applicable overpayment." Internal Revenue Manual ("**IRM**") § 20.2.4.8.3.4(2). This means that the Late Filing Rule, 45-Day Rules, and 180-Day Rules should not have been applied by the IRS to Plaintiffs or to the other members of the class.

30.    Subsection (d)(1) of Section 7508A was further amended in 2021 to redefine the mandatory extension period to end "on the date which is 60 days after the later of . . . [the] earliest incident date . . . or the date such declaration was issued." Infrastructure Investment and Jobs Act,

10

Pub. L. No. 117-58, § 80501(a)(1), 135 Stat. 429, 1335 (Nov. 15, 2021). However, that amendment was not made retroactive and does not affect Plaintiffs' claims in this case. In subsection (b) of Section 80501 of that Public Law, 135 Stat. 1335, Congress provided: "(b) EFFECTIVE DATE.— The amendment made by this section shall apply to federally declared disasters declared after the date of enactment of this Act." This amendment was enacted on November 15, 2021 and, as further described below, President Trump had by that time already declared the COVID-19 pandemic to be a disaster in all U.S. states and territories, and the District of Columbia.

## FACTUAL BACKGROUND

### A. The President issues the COVID-19 Emergency Declaration and Stafford Act Disaster Declarations

31.    On March 13, 2020, President Trump issued an emergency declaration under the authority of the Stafford Act for all states and territories (the "**Emergency Declaration**").[7] He wrote: "I have determined that the ongoing Coronavirus Disease 2019 (COVID-19) pandemic is of sufficient severity and magnitude to warrant an emergency determination under section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"). . . . [A]s an initial step, I hereby determine, under section 501(b) of the Stafford Act, that an emergency exists nationwide."[8]

32.    President Trump then issued separate declarations, under Stafford Act Section 401(a),[9] for all 50 states, the District of Columbia, and all U.S. territories, in which he declared

---

[7] Letter from President Donald J. Trump on Emergency Determination Under the Stafford Act (Mar. 13, 2020), *available at* https://trumpwhitehouse.archives.gov/briefings-statements/letter-president-donald-j-trump-emergency-determination-stafford-act/.

[8] Section 501(b) of the Stafford Act refers to disasters "for which the primary responsibility for response rests with the United States." 42 U.S.C. § 5191(b).

[9] Section 401(a) of the Stafford Act refers to requests made to the President by a Governor for a declaration of a major disaster that is "beyond the capabilities of the State." 42 U.S.C. § 5170(a).

that the COVID-19 pandemic constituted a major disaster in each of them (the "**Stafford Act Disaster Declarations**").[10]

33.    All of the Stafford Act Disaster Declarations were substantively identical, and they all defined the duration of the major disaster as "beginning on January 20, 2020, and continuing." The first paragraph of the New York declaration reads as follows:

> I [President Trump] have determined that the emergency conditions in the State of New York resulting from the Coronavirus Disease 2019 (COVID-19) pandemic **beginning on January 20, 2020, and continuing,** are of sufficient severity and magnitude to warrant a major disaster declaration under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121 et seq. (the "Stafford Act"). Therefore, I declare that such a major disaster exists in the State of New York.

New York; Major Disaster and Related Determinations, 85 Fed. Reg. 20702 (April 14, 2020).[11]

34.    Both the Emergency Declaration and the Stafford Act Disaster Declarations are conclusive proof that the COVID-19 pandemic was a "disaster subsequently determined by the President of the United States to warrant assistance by the Federal Government under the Robert T. Stafford Disaster Relief and Emergency Assistance Act." 26 U.S.C. § 165(i)(5)(A).[12] Therefore, the COVID-19 pandemic also constituted a disaster that entitled all taxpayers in the United States to the mandatory tax relief provided by the 2019 Amendment. 26 U.S.C. § 7508A(d)(2)(A), (B) (defining "qualified taxpayers" to include those residing in, or with a "principal place of business in," a "disaster area"); *id.* § 7508A(d)(3) ("For purposes of this

---

[10] Congressional Research Service, Stafford Act Declarations for COVID-19 FAQ (Apr. 22, 2020), https://www.congress.gov/crs_external_products/R/PDF/R46326/R46326.5.pdf.

[11] Available at https://www.govinfo.gov/content/pkg/FR-2020-04-14/pdf/2020-07843.pdf (last visited February 6, 2026).

[12] Under the Stafford Act, the President may determine that a disaster warrants assistance by the federal government by declaring it a major disaster, an emergency, or both. 42 U.S.C. §§ 5170(a) (major disasters), 5191(a) (emergencies). Federally declared disasters thus include both disasters that are declared major disasters under the Stafford Act and disasters that are declared emergencies under the Stafford Act. By separate declarations, the COVID-19 pandemic was declared both an emergency and a major disaster under the Stafford Act.

subsection, the term 'disaster area' has the meaning given such term under subparagraph (B) of section 165(i)(5) with respect to a Federally declared disaster (as defined in subparagraph (A) of such section).").

35.     The Stafford Act Disaster Declarations were amended multiple times. The final amendment specified the ending incident date: "Notice is hereby given that the incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023." Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8884 (Feb. 10, 2023). This conforms to what the Federal Emergency Management Agency ("**FEMA**") identifies as the "incident period" on its website:[13]

## New York Covid-19 Pandemic

### DR-4480-NY



**Incident Period:** Jan 20, 2020 - May 11, 2023
**Declaration Date:** Mar 20, 2020

**Quick Links**

- **Recovery resources:** State & Local | National

- **Connect:** Social Media | Mobile App & Text

- **24/7 counseling:** Disaster Distress Helpline

36.     The same incident period applies to every other state and territory, and the District of Columbia.

**B. The Treasury declares two short discretionary grace periods pursuant to subsection *(a)* of Section 7508A, but disregards the mandatory tolling period provided by subsection *(d)***

---

[13] https://www.fema.gov/disaster/4480 (last visited February 6, 2026).

37.    On April 6, 2020, soon after the President's Emergency Declaration, the Treasury exercised the *discretionary* authority of subsection *(a)* of Section 7508A to extend individuals' April 15 income tax return filing deadline to July 15, 2020 (the "**2020 Grace Period**"). IRS Notices 2020-17 & 2020-18, 2020-15 I.R.B. 590 (Apr. 6, 2020). This postponement affected only individual taxpayers who filed their returns on or before July 15, 2020. It did *not* affect the millions of taxpayers who exercised their right to file on a standard six-month extension.[14]

38.    The Treasury also chose to disregard the Interest-Limiting Exemptions for individual taxpayers who filed their returns before July 15, 2020. The IRS published implementing guidance that illustrates how a postponement under Section 7508A, such as the 2020 Grace Period, affects the interest due on refunds of overpayments:

> [W]here a disaster-related postponement of the filing deadline exists, the IRS is required by law to pay interest on any applicable overpayment. Additionally, eligible individual taxpayers are excluded from the interest rules of IRC 6611(e), Disallowance of Interest on Certain Overpayments. Thus, for eligible individual taxpayers, the 45-day interest check for overpayments does not apply to original returns (*IRM 20.2.4.8.3.1*), amended tax returns (*IRM 20.2.4.8.3.2*), and IRS-initiated adjustments (*IRM 20.2.4.8.3.3*).
>     **\*\*\***
> **Example:**
>     *1* Original Return
> An original return, Form 1040, is received July 8, 2020, reporting an overpayment for the tax year ending December 31, 2019, which is comprised entirely of prepaid credit (federal income tax withholding, earned income credit, additional child tax credit, etc.), available April 15, 2020. Because the original tax return was timely filed, determined by taking into account the postponed due date of July 15, 2020, interest is allowed on the overpayment **from** its availability date (April 15, 2020) **to** the refund schedule date (less the applicable back-off period of IRC 6611(b)(2) for computer-generated/systemic refunds - *IRM 20.2.4.8.1*(3)). Furthermore, due to the taxpayer meeting all eligibility criteria described in item 3 above (*IRM 20.2.4.8.3.4*(3)), IRC 6611(e)(1) is inapplicable (see *IRM 20.2.4.8.3.1*, 45-Day Rule and All Original Tax Returns), regardless of whether the 45-day period is met.

---

[14] The IRS automatically grants six-month extensions to file a return upon request, which normally extends the due date from April 15 to October 15. *See* Treas. Reg. § 1.6081-4. Any return for which such an extension has been granted is deemed timely if filed on or before October 15.

IRM § 20.2.4.8.3.4.[15]

39.    Importantly, this discretionary postponement was structured as a *grace* period, and not as a *tolling* period. A tolling period stops the clock on a period to act that would otherwise run during the tolling period: any time remaining to act is suspended from the date of tolling until the tolling period ends and, at that point, the remaining time is then added to any time otherwise remaining to act. For example: if a taxpayer's deadline to file her tax return is October 15 (because that taxpayer obtained a six-month extension), and if a 61-day tolling period began on April 1, her tax return would be due on December 15. A grace period is different: it shifts deadlines that fall during the grace period to the grace period's last day. For example: if a 61-day *grace period* began on April 1, then that same taxpayer would not benefit from the grace period. Her return would still be due on October 15.

40.    Courts and the IRS have consistently interpreted the combat-zone tax-relief statute, 26 U.S.C. § 7508, to provide tolling during the periods in which the taxpayer is deployed, and not to provide for a mere grace period. *See* Rev. Rul. 76-425, 1976-2 C.B. 447; Rev. Rul. 70-159, 1970-1 C.B. 277; Rev. Rul. 69-343, 1969-1 C.B. 305; *accord Wood v. Comm'r*, T.C. Memo 2021-103; *Hampton v. United States*, 206 Ct. Cl. 422, 443 (1975). Taxpayers entitled to disaster-related tax relief under Section 7508A are likewise entitled to the benefit of tolling, since the statutory text is identical. *Compare* 26 U.S.C. § 7508(a) (providing that the relevant time period "shall be disregarded in determining, under the internal revenue laws, in respect of any tax liability . . . Whether any of the following acts was performed within the time prescribed therefor"), *with* 26 U.S.C. § 7508A(a) (the Treasury may "specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer . . .

---

[15]    Available at https://www.irs.gov/irm/part20/irm_20-002-004r#idm140271560130512 (last visited February 6, 2026).

whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor . . . .").

41.    The Treasury has elsewhere exercised its authority under 26 U.S.C. § 7508A(a) to implement tolling periods.[16] For whatever reason, however, the Treasury granted only a grace period for the filing of individual tax returns in 2020, rather than tolling.

42.    As a result, only those individual income taxpayers who filed their returns on or before July 15, 2020—and not after—received overpayment interest calculated without respect to the Interest-Limiting Exemptions pursuant to the 2020 Grace Period. The Stafford Act Disaster Declarations, however, were indisputably in effect for the entirety of 2020, and weekly COVID-19 death tolls would not reach their peak until January 2021. For example, take two individual taxpayers who both overpaid their income taxes for tax year 2019 and who both obtained an automatic six-month extension of their tax-return filing deadline to October 15, 2020. Suppose the first taxpayer filed her return on July 15, 2020, and the other filed his return one month later, on August 15, 2020, and the IRS refunded the amount of overpayment to both taxpayers 20 days after each filed. The first taxpayer would have received overpayment interest running from April 15, 2020 to the relevant date of her refund payment.[17] By contrast, the second taxpayer, who filed his

---

[16] *See, e.g.*, Notice 2020-39 § III.C (tolling period for the 30-month "substantial improvement period" relating to opportunity zones, alongside grace periods for other opportunity zone requirements); Notice 2021-10 § III.B (tolling period for the 30-month "substantial improvement period"); CCA 201144029 (tolling period for the IRS to assess tax, "over and above the tolling provided for by [other sections]"). The Treasury has also exercised its authority under the nearly identical language of 26 U.S.C. § 7508A(b) to implement tolling periods. *See, e.g.*, Extension of Certain Timeframes for Employee Benefit Plans, Participants, and Beneficiaries Affected by the COVID-19 Outbreak, 85 Fed. Reg. 26351, 26354-55 (May 4, 2020) (example 1, delaying a filing deadline beyond the end of a tolling period by allowing the full time prescribed for filing to run after the end of the tolling period); *id.* (example 6, delaying a filing deadline that would have expired after a tolling period by preserving the portion of the time prescribed for filing that would have run during the tolling period).

[17] The relevant date is the date of the refund check, less a "**back-off period**" that cannot be more than 30 days. *See* 26 U.S.C. § 6611(b)(2); IRM § 20.2.4.7.1.1(1) (Mar. 5, 2015); IRM § 20.2.4.8.1(2) (Mar. 15, 2024). For an overpayment issued to individual taxpayers by means of normal computer processing and without a manual interest calculation, the IRS's back-off period is four business days for payments made

return one month later, received *no* interest on his overpayment—even though the government had use of that taxpayer's money for even longer, and even though the President's disaster declarations were still in effect.

43.     The Treasury again made a discretionary postponement of individuals' April income tax return filing deadline in 2021 (the "**2021 Grace Period**"). The IRS extended the filing deadline from April 15, 2021 until May 17, 2021. *See* IRS Notice 2021-21, 2021-15 I.R.B. 986 (Mar. 29, 2021). Again, this postponement was structured as a grace period and not as a tolling period. Accordingly, this postponement did not benefit any taxpayers who filed their returns after May 17, 2021, even though the Stafford Act Disaster Declarations would remain in effect for another 21 months after that date.

44.     The IRS did not recognize any mandatory tolling pursuant to Section 7508A(d) in connection with the Emergency Declaration or the Stafford Act Disaster Declarations. The IRS's decisions to grant relatively short grace periods, and to ignore the tolling period mandated by the 2019 Amendment, resulted in the denial of overpayment interest to Plaintiffs and millions of other taxpayers during a time of disaster.

45.     The chart below shows (a) the CDC's reported weekly death tolls from COVID-19,[18] (b) the Treasury's two discretionary extension periods (the 2020 Grace Period and the 2021 Grace Period), and (c) the mandatory tolling period that should have been applied by the IRS pursuant to Section 7508A(d):

---

by direct deposit and six business days for payments made by paper check. IRM § 20.2.4.7.1.1(2) (Mar. 5, 2015); IRM § 20.2.4.8.1(3) (Mar. 15, 2024).

[18] https://www.cdc.gov/covid/php/surveillance/index.html (last visited February 6, 2026).



**C. The regulation that the IRS relied upon in refusing to provide mandatory tax relief is invalid because it contradicts the plain language of subsection (d) of Section 7508A**

46.     To justify the IRS's refusal to recognize any mandatory tolling resulting from the Stafford Act Disaster Declarations, the Treasury developed an "interpretation" of that statute that was later memorialized in Treas. Reg. § 301.7508A-1(g). The interpretation functionally nullified subsection (d) of Section 7508A and made the automatic and self-executing relief provided therein entirely contingent on the Treasury's exercise of discretionary authority under subsection (a) of Section 7508A.

47.     A proposed version of the regulation was published for comment on January 13, 2021. *Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster*, 86 Fed. Reg. 2607 at 2612 (Jan. 13, 2021). Numerous groups submitted comments warning that it was invalid as contrary to statute.[19] The Treasury nonetheless

---

[19] American Benefits Council, *Comment Letter on Mandatory 60-Day Postponement Period of Certain Tax-Related Deadlines* (Mar. 9, 2021), https://www.regulations.gov/comment/IRS-2021-0002-0004; Jonathan L. Holbrook & Spencer F. Walters, *Comment Letter on Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster* (Mar. 14, 2021), https://www.regulations.gov/comment/IRS-2021-0002-0008; Neighborhood Legal Services of Los Angeles County, *Comment Letter on Mandatory 60-Day Postponement of Certain Tax-Related Deadlines*

adopted this regulation in substantially the same form on June 11, 2021, and the final text of the

regulation reads, in relevant part, as follows:

> Treas. Reg. § 301.7508A-1(g) Mandatory 60-day postponement—
>
> (1) In general. In addition to (or concurrent with) the postponement period specified by the Secretary in an exercise of the authority under section 7508A(a) to postpone time-sensitive acts by reason of a federally declared disaster, qualified taxpayers (as defined in section 7508A(d)(2)) are entitled to a mandatory 60-day postponement period during which the time to perform those time-sensitive acts is disregarded in the same manner as under section 7508A(a). The rules of this paragraph (g)(1) apply with respect to a postponement period specified by the Secretary under section 7508A(b), to postpone acts as provided in section 7508A(d)(4). ***Except for the acts set forth in paragraph (g)(2) of this section, section 7508A(d) does not apply to postpone any acts.***
>
> ***(2) Acts postponed. The time-sensitive acts that are postponed for the mandatory 60-day postponement period are the acts determined to be postponed by the Secretary's exercise of authority under section 7508A(a) or (b).*** In addition, in the case of any person described in section 7508A(b), the time-sensitive acts postponed for the mandatory 60-day postponement period include those described in section 7508A(d)(4):
>
> (i) Making contributions to a qualified retirement plan (within the meaning of section 4974(c)) under section 219(f)(3), 404(a)(6), 404(h)(1)(B), or 404(m)(2);
>
> (ii) Making distributions under section 408(d)(4);
>
> (iii) Recharacterizing contributions under section 408A(d)(6); and
>
> (iv) Making a rollover under section 402(c), 403(a)(4), 403(b)(8), or 408(d)(3).
>
> ***
>
> **(ii) Limitations on the mandatory 60–day postponement period.** (A) In no event will the mandatory 60–day postponement period be calculated to exceed one year.

Treas. Reg. § 301.7508A-1 (emphasis added).

---

*by Reason of a Federally Declared Disaster* (Mar. 15, 2021), https://www.regulations.gov/comment/IRS-2021-0002-0006; Villanova Federal Tax Clinic and Legal Aid Society of Columbus Low Income Taxpayer Clinic, *Comment Letter on Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster* (Mar. 16, 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4944108.

48.    This regulation was challenged by a taxpayer in *Abdo v. Commissioner*, 162 T.C. 148 (2024). In an opinion signed by 13 judges on the United States Tax Court, and with no dissents, the Tax Court held that Treasury Regulation § 301.7508A-1(g)(2) was invalid because it conflicted with the plain and literal language of subsection (d) of Section 7508A, and the specific and broader context of the statute as a whole, which requires a "mandatory, automatic extension" for all acts referred to in subsection (a):

> Upon conducting the required consideration of the plain and literal language of section 7508A(d), the specific context in which the language is used, and the broader context of the statute as a whole, however, we conclude that the "in the same manner" language of this statute is not "reasonably susceptible" of being interpreted to refer to the process or procedure by which the Secretary grants a postponement under subsection (a) or of demonstrating any ambiguity; instead, it provides for an unambiguously self-executing postponement period that incorporates all of the acts referenced by section 7508A(a) . . . .
>
> . . . Having concluded that section 7508A(d) unambiguously provides for a mandatory, automatic extension of at least 60 days for the time to file a petition with the Tax Court, we conclude that deference to Treasury Regulation § 301.7508A-1(g)(1) and (2) is unwarranted, and we hold Treasury Regulation § 301.7508A-1(g)(1) and (2) invalid to the extent it limits the non-pension-related "time-sensitive acts that are postponed for the mandatory 60-day postponement period . . . [to] the acts determined to be postponed by the Secretary's exercise of authority under section 7508A(a)." *See Chevron*, 467 U.S. at 842–43.

*Abdo*, 162 T.C. at 165–66.[20]

49.    The Tax Court further held that the Stafford Act Disaster Declaration for Ohio triggered subsection (d) of Section 7508A, and therefore extended the time for the taxpayer to perform the relevant act. *Id*. at 169.

---

[20] *Abdo* pre-dated *Loper Bright Enterprises, Inc. v. Raimondo*, 603 U.S. 369 (2024), in which the Supreme Court overruled *Chevron*. The Treasury's regulation is entitled to even less deference under the new standard.

50.     The government subsequently designated Treasury Regulation § 301.7508A-1(g)(2) for removal. *See* Department of the Treasury 2025–2026 Priority Guidance Plan (September 30, 2025) at 7 ("Regulations to remove regulations under §7805A [*sic*] regarding mandatory 60-day postponement of certain tax-related deadlines by reason of a federally declared disaster.").[21]

51.     In a subsequent case, the United States Court of Federal Claims confirmed that subsection (d)'s mandatory tolling period, which resulted from the Stafford Act Disaster Declarations, "began on January 20, 2020, and ended on July 10, 2023, 60 days after the emergency declaration's latest incident date." *Kwong v. United States*, No. 23-267, 2025 WL 3280835, at *5 (Fed. Cl. Nov. 25, 2025). In doing so, the court explicitly rejected the government's arguments that a shorter period of 61 days or one year should apply. *See id.* at **4–5.

**D. Taxpayers are entitled to the mandatory tax relief provided by Section 7508A, including payment of interest on overpayments**

52.     The Treasury and the IRS have failed to provide the mandatory tax relief provided by Congress, in direct contravention of the plain text of subsections (c) and (d) of Section 7508A.

53.     There was a federally declared disaster under the Stafford Act in all U.S. states and territories, and the District of Columbia from January 20, 2020 through May 11, 2023. Pursuant to subsection (d) of Section 7508A, this resulted in a mandatory tolling period that ran from January 20, 2020 through July 10, 2023, which period must be disregarded in determining, under the internal revenue laws, in respect of any tax liability of qualified taxpayers, whether any of the acts described in paragraph (1) of Section 7508(a)—including filing any return of income, estate, gift, employment, or excise tax—were performed within the time prescribed therefor.

---

[21] https://www.irs.gov/pub/irs-counsel/2025-2026-initial-pgp.pdf (last visited February 6, 2026).

54.     As the IRS recognizes, "where a disaster-related postponement of the filing deadline exists, the IRS is required by law to pay interest on any applicable overpayment." IRM § 20.2.4.8.3.4(2). This is because the Interest-Limiting Exemptions are suspended whenever a taxpayer's tax-return filing deadline has been tolled pursuant to Section 7508A and the taxpayer timely files. *See* 26 U.S.C. § 7508A(c) ("The rules of section 7508(b) shall apply for purposes of this section."); *id.* § 7508(b)(2) ("subsections (b)(3) and (e) of section 6611"—the Interest-Limiting Exemptions—"shall not apply").

55.     Consistent with Section 7508 (the combat-zone statute) and the plain language of Section 7508A, the mandatory extension operates as a tolling period. Therefore, the Interest-Limiting Exemptions do not apply when a refund is issued to any taxpayer with a U.S. principal residence or principal place of business (other than the business of performing services as an employee) with respect to a timely filed tax return, if the taxpayer's time prescribed for filing that return (without regard to extensions that began after May 11, 2023) overlapped the period from January 20, 2020 through July 10, 2023.

56.     Thus, for example, the Interest-Limiting Exemptions do not apply to individual qualified taxpayers who filed their income tax returns for the 2022 tax year on or before October 26, 2023. This is because these taxpayers' tax-return filing deadline was tolled pursuant to Section 7508A and these taxpayers timely filed their returns. Their 108-day time prescribed for filing (running from January 1 through April 18, 2023) overlapped—and was preserved by—the mandatory tolling period (running from January 20, 2020 through July 10, 2023). Those 108 days resumed running on July 11, 2023, rendering October 26, 2023 the new filing deadline for these taxpayers. Moreover, the Interest-Limiting Exemptions do not apply to individual qualified taxpayers who timely requested and received a six-month extension of time to file their income

tax returns for the 2022 tax year if they filed those returns on or before April 23, 2024. The first

191 days of their time prescribed for filing (from January 1, 2023 through July 10, 2023)

overlapped—and were preserved by—the mandatory tolling period and resumed running on

October 16, 2023, rendering April 23, 2024 the new filing deadline for these taxpayers.

57.    Notably, Plaintiffs and other taxpayers would be entitled to some overpayment

interest even if the Treasury's purported interpretation of the 2019 Amendment were valid. As

discussed above, Treasury Regulation § 301.7508A-1(g) purported to make mandatory tolling

under subsection (d) of Section 7508A contingent on discretionary postponement pursuant to

subsection (a). But, as also discussed above, the Treasury *did* exercise its authority to provide a

discretionary postponement of tax return filing deadlines for the COVID-19 pandemic. So even

under the IRS's own interpretation, subsection (d) would have been triggered for the COVID-19

pandemic as to tax return filing deadlines, and thus provided mandatory tolling (and overpayment

interest) to all taxpayers residing in the disaster area, which spanned the entire United States.

CLASS ACTION ALLEGATIONS

58.    Plaintiffs bring this class action under Rule 23(b)(3) of the Federal Rules of Civil

Procedure.

59.    Plaintiffs seek certification of the following class (the "**Overpayment Interest**

**Class**"):

All persons:

1. who filed a federal tax return (whether for income tax or any other kind of tax)
   that: (i) in the case of an individual, reported a principal residence located in
   any U.S. state, any U.S. territory, or the District of Columbia; (ii) in the case of
   any taxpayer (including an individual), reported a principal place of business
   (other than the business of performing services as an employee) located in any
   U.S. state, any U.S. territory, or the District of Columbia; or (iii) in the case of
   any taxpayer (including an individual), was filed using an employer
   identification number for which the Form SS-4 on file with the IRS (as updated

by any Forms 8822-B) reported a principal place of business located in any U.S. state, any U.S. territory, or the District of Columbia;

2. whose time prescribed for filing that return (without regard to extensions that began after May 11, 2023) overlapped the period from January 20, 2020 through July 10, 2023;

3. who filed that return by the filing deadline that would result from tolling the period from January 20, 2020 through July 10, 2023;

4. who received a refund with respect to that return (including pursuant to a refund claim or IRS-initiated adjustment) and whose refund would have generated additional interest absent application of 26 U.S.C. § 6611(b)(3) or (e); and

5. whose additional interest with respect to a given overpayment, including compounding, does not exceed $10,000.

60. Excluded from the class are class counsel in this case and their immediate family members, any judicial officers and staff presiding over this action, and any employee of the U.S. Department of the Treasury.

61. Plaintiffs reserve the right to propose subclasses, such as for distinct tax years or filing windows.

62. The proposed class is so numerous that joinder of all members is impractical. While the exact number and identity of class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, the IRS's published statistics suggest that the number of class members in the Overpayment Interest Class is in the millions.

63. There are questions of law and fact common to all members of the Overpayment Interest Class. Those common questions include, but are not limited to, the following:

a. Did the Stafford Act Disaster Declarations trigger mandatory tolling pursuant to 26 U.S.C. § 7508A(d)?

b. In the alternative, did the Emergency Declaration trigger mandatory tolling pursuant to 26 U.S.C. § 7508A(d)?

c. What was the mandatory tolling period's duration?

d.  Did mandatory tolling suspend application of the Interest-Limiting Exemptions to members of the Overpayment Interest Class?

64.    Plaintiffs' claims are typical of the claims of the Overpayment Interest Class because they, like the class members, overpaid their taxes, filed tax returns during the relevant period, and received refunds of their overpayments, but did not receive the statutorily-mandated interest on those overpayments.

65.    Plaintiffs will fairly and adequately protect the interests of the Overpayment Interest Class because they were similarly harmed and seek similar redress as the unnamed class members, do not have any antagonistic interests relative to the unnamed class members, and will vigorously prosecute the interests of the class through qualified counsel. Plaintiffs intend to fully and vigorously litigate this case.

66.    Plaintiffs have retained attorneys who are knowledgeable and experienced regarding federal tax law and complex class action litigation. Ivins, Phillips & Barker, Chartered is one of the leading tax boutiques in the country, and Mr. Holbrook and Mr. Walters were the authors of a comment letter that was quoted and relied upon by the Tax Court in *Abdo*. Susman Godfrey L.L.P. specializes in complex civil litigation, and has been appointed by this Court as class counsel in numerous complex class actions.

67.    The questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for fairly and efficiently adjudicating these claims. There will be little difficulty in managing this action as a class action because those predominating common questions apply class-wide and individual damages can be mechanically determined using the IRS's own records, which contain addresses and data showing when each

class member's tax returns were filed, the amount of the overpayments, the amount and issuance

dates of refunds of those overpayments, any overpayment interest paid, and all other

electronic data necessary to automatically recalculate the amount of interest owed to each

prospective class member in the absence of the Interest-Limiting Exemptions. The IRS's records

also contain the names and most recent contact information for all prospective class members.

68.     Joinder of all members is impracticable. Because the injury suffered by the

individual class members may be relatively small, the expense and burden of individual litigation

make it impossible for members of the proposed class to individually redress the wrongs done to

them.

69.     This action does not present any undue difficulties that would impede its

management by the Court as a class action.

### CLAIM FOR RELIEF: UNPAID INTEREST ON TAX OVERPAYMENTS PURSUANT TO 28 U.S.C. § 1346(a)(2) (on behalf of the Overpayment Interest Class)

70.     Plaintiffs reallege and incorporate all allegations of this complaint as if fully set

forth herein.

71.     Plaintiffs bring this case pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2),

and pursuant to 26 U.S.C. § 6611, which waive sovereign immunity and provide jurisdiction and

a cause of action by which a taxpayer may recover overpayment interest. *See Pfizer Inc. v. United

States*, 939 F.3d 173, 177 (2d Cir. 2019). As the IRS concedes:

> In District Courts and the Court of Federal Claims, overpayment interest may be raised as Tucker Act claims for additional overpayment interest. Taxpayers are not required to file a claim with the Service prior to filing a complaint in court.

IRS Procedure and Administration Deskbook at 38.

72.    The Stafford Act Disaster Declarations and/or the Emergency Declaration caused mandatory tolling of tax-return filing deadlines for Plaintiffs and taxpayers nationwide for several years. *See* 26 U.S.C. § 7508A(d).

73.    The Interest-Limiting Exemptions that often limit the United States's obligation to pay interest when refunding taxpayers' overpayments do not apply when there is a disaster-related tolling of filing deadlines. *See* 26 U.S.C. § 7508A(c).

74.    Defendant nonetheless applied those Interest-Limiting Exemptions to Plaintiffs and the other members of the Overpayment Interest Class.

75.    By applying the Interest-Limiting Exemptions to Plaintiffs and the other class members, the United States failed to pay the interest it was required by statute to pay.

76.    Plaintiffs and the other class members are among those taxpayers who were not paid interest which they are owed on this basis and are entitled to the payment of that interest, including ongoing compounding of the interest that has not been paid.

77.    Each tax period represents a separate claim for purposes of 28 U.S.C. § 1346(a)'s $10,000 jurisdictional limit.

## PRAYER FOR RELIEF

Plaintiffs request that the Court:

a.    Certify the Overpayment Interest Class, and any proposed sub-classes, under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as class representatives, and appoint Susman Godfrey L.L.P. and Ivins, Phillips & Barker, Chartered as class counsel;

b.    Award Plaintiffs and the class monetary relief for unpaid interest under 26 U.S.C. § 6611, including compounding as required under 26 U.S.C. § 6622;

c.    Determine that Plaintiffs and their counsel have generated for the class, through this action, a common fund of monetary relief owed or to be paid to the class members and

from that common fund award Plaintiffs' counsel reasonable attorneys' fees and out-of-pocket costs incurred in representing the class and generating the common fund; and

d.      Award Plaintiffs and the class such other relief as this Court may deem just and proper under the circumstances.

Dated: February 9, 2026                    Respectfully submitted,

                                           _____
                                           Ryan C. Kirkpatrick
                                           Steven M. Shepard
                                           Zachary B. Savage
                                           Casen B. Ross (application for admission to be
                                           filed)
                                           SUSMAN GODFREY L.L.P.
                                           One Manhattan West, 50th Floor
                                           New York, New York 10001
                                           Telephone: 212-336-8330
                                           Facsimile: 212-336-8340
                                           rkirkpatrick@susmangodfrey.com
                                           sshepard@susmangodfrey.com
                                           zsavage@susmangodfrey.com
                                           cbross@susmangodfrey.com

                                           Steven G. Sklaver (*pro hac vice* to be filed)
                                           SUSMAN GODFREY L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, California 90067-6029
                                           Telephone: 310-789-3100
                                           Facsimile: 310-789-3150
                                           ssklaver@susmangodfrey.com

                                           Jonathan L. Holbrook (*pro hac vice* to be filed)
                                           Spencer F. Walters (*pro hac vice* to be filed)
                                           IVINS, PHILLIPS & BARKER, CHARTERED
                                           1717 K Street, N.W.
                                           Suite 600
                                           Washington, D.C. 20006
                                           Telephone: (202) 393-7600
                                           Facsimile: (202) 393-7601
                                           jholbrook@ipbtax.com
                                           swalters@ipbtax.com

                                           *Attorneys for Plaintiffs*