UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN FLEISHER and ANDREA BIERSTEIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 26 Civ. 1096 (DEH) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2663
E-mail: jennifer.jude@usdoj.gov

JENNIFER JUDE
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS


**PAGE**

PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 2

A. Plaintiffs' Tax Year 2021 Return and Refund ....... 2

B. The Statutory Framework for Calculating Overpayment Interest ....... 3

C. Calculation of Plaintiffs' Overpayment Interest ....... 4

D. The Class Action Complaint ....... 4

E. Congress Enacts Section 7508A to Provide Tax-Related Relief in Connection with Federally Declared Disasters ....... 5

F. Congress Adds a Mandatory 60-Day Postponement Under Section 7508A(d)...... 6

G. The COVID-19 Pandemic Disaster ....... 8

H. The IRS's Response to the COVID-19 Pandemic Disaster ....... 9

STANDARD OF REVIEW ....... 10

ARGUMENT ....... 10

I. UNDER ITS PLAIN TEXT, SECTION 7508A(D) DID NOT TRIGGER A 3.5-YEAR EXTENSION OF TAX RETURN FILING DEADLINES ....... 10

II. *KWONG* WAS WRONGLY DECIDED AND SHOULD NOT BE FOLLOWED BY THIS COURT ....... 13

A. *Kwong* Was Wrong to Interpret "Continuing" as a Date and to Ignore "So Specified" ....... 15

B. *Kwong* Improperly Conflated a "Incident Date" in a Presidential Declaration with a FEMA "Incident Period" ....... 17

C. *Kwong* Drew an Incorrect Conclusion from Congress's 2021 Amendment of Section 7508A(d) ....... 20

III. THE CONTEXT AND HISTORY OF SECTION 7508A ALSO DEMONSTRATE THAT IT DID NOT CREATE A MASSIVE AUTOMATIC POSTPONEMENT OF TAX DEADLINES ........ 21

A. Plaintiffs' Interpretation of the Statute Conflicts with Congress's Intent to Provide Certainty to Taxpayers ........ 21

B. Plaintiffs' Proposed Interpretation Would Give FEMA Outsized Authority over Tax Administration ........ 23

IV. EVEN IF THE SECTION 7508A(D) POSTPONEMENT PERIOD EXTENDED BEYOND 60 DAYS, IT CANNOT EXCEED ONE YEAR ........ 23

CONCLUSION ........ 26

## TABLE OF AUTHORITIES

**CASE** **PAGE(s)**

*Abdo v. Comm'r*,
162 T.C. 148 (2024) ........ *passim*

*Ala. Ass'n of Realtors v. HHS*,
594 U.S. 758 (2021) ........ 23

*Am. Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022) ........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ........ 10

*Burfkin v. Collins*,
604 U.S. 369 (2025) ........ 14

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ........ 10

*Dubin v. United States*,
599 U.S. 110 (2023) ........ 13

*Gonzales v. Oregon*,
546 U.S. 243 (2006) ........ 23

*HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*,
594 U.S. 382 (2021) ........ 12

*Kwong v. United States*,
179 Fed. Cl. 382 (2025) ........ *passim*

*Microsoft Corp. v. i4i L.P.*,
564 U.S. 91 (2011) ........ 17

*Lee v. Bankers Tr. Co.*,
166 F.3d 540 (2d Cir. 1999) ........ 11

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) ........ 16

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) .......... 24

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) .......... 16

*Patel v. Garland*,
596 U.S. 328 (2022) .......... 18

*Polselli v. IRS*,
598 U.S. 432 (2023) .......... 17

*Rivera-Perez v. Stover*,
171 F.4th 196 (2d Cir. 2026) .......... 10

*Russello v. United States*,
464 U.S. 16 (1983) .......... 18

*Salinas v. United States R.R. Ret. Bd.*,
592 U.S. 188 (2021) .......... 18

*Sebelius v. Cloer*,
569 U.S. 369 (2013) .......... 12

*Spadaro v. U.S. Customs & Border Prot.*,
978 F.3d 34 (2d Cir. 2020) .......... 10

**STATUTES**

26 U.S.C. § 165(i)(5)(A) .......... 6

26 U.S.C. § 6611(b) .......... 3

26 U.S.C. § 6611(e)(1) .......... 4

26 U.S.C. § 7508(a)(1)(A) .......... 6

26 U.S.C. § 7508(b) .......... 6

26 U.S.C. § 7508A .......... 1, 20

26 U.S.C. § 7508A(a) .......... 5

26 U.S.C. § 7508A(d) .......... *passim*

26 U.S.C. § 6611(e)(1)-(4) ... 3

28 U.S.C. § 1346(a)(2) ... 3

42 U.S.C. § 5170 ... 20

42 U.S.C. § 5177 ... 15

42 U.S.C. § 5121-5207 ... 6

Pub. L. No. 105-34 ... 5

Pub. L. No. 116-94 ... 6

Pub. L. No. 117-58 ... 7

Pub. L. No. 119-29 ... 8

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ... 1, 10

**REGULATIONS**

26 C.F.R. § 301.7508A-1 ... 9

26 C.F.R. § 301.7508A-1(g)(3)(ii)(A) ... 9

44 C.F.R. § 206.32(f) ... 15

44 C.F.R. § 206.38 ... 20

70 Fed. Reg. 53802 (Sept. 12, 2005) ... 19

70 Fed. Reg. 53803 (Sept. 12, 2005) ... 13, 16

85 Fed. Reg. 15337 (Mar. 13, 2020) ... 8

85 Fed. Reg. 18580 (Apr. 2, 2020) ... 12

85 Fed. Reg. 20699 (Apr. 14, 2020) ... 8, 19

85 Fed. Reg. 20702 ... 8

86 Fed. Reg. 63045 (Nov. 15, 2021) ........ 12

88 Fed. Reg. 8884 (Feb. 10, 2023) ........ 9, 15

Exec. Order No. 12673 § 1, 54 Fed. Reg. 12571 (Mar. 23, 1989) ........ 20

**OTHER AUTHORITIES**

IRS Notice 2020-18 (Mar. 21, 2020) ........ 9

IRS Notice 2021-21 (Mar. 31, 2021) ........ 9

Defendant the United States of America (the "Government"), by its attorney James M. McDonald, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the Class Action Complaint (the "Complaint") filed by Plaintiffs Martin Fleisher and Andrea Bierstein ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

Plaintiffs, on behalf of themselves and a putative class of millions of other taxpayers, seek to recover interest on federal tax refunds they allege they are owed related to tax returns they filed during the COVID-19 pandemic. Plaintiffs argue they are entitled to this unpaid interest based on their reading of 26 U.S.C. § 7508A, a provision of the Internal Revenue Code that Congress added in 2019 that postpones certain tax-related deadlines and rules during federally declared disasters. According to Plaintiffs, under Section 7508A(d), the President's March 2020 declarations of the COVID-19 pandemic as a disaster suspended for three and a half years the rules limiting the IRS's obligation to pay interest on refunds. Plaintiffs claim the IRS erred in providing only much shorter COVID-related suspensions of this obligation. In this lawsuit, Plaintiffs seek to recover the unpaid interest that would be owed under their expansive, and incorrect, interpretation of the 2019 statute.

This case is one of many filed in the wake of *Kwong v. United States*, 179 Fed. Cl. 382 (2025), a recent decision by a judge of the U.S. Court of Federal Claims, that endorsed an overbroad reading of Section 7508A(d). But *Kwong*—which the Government has appealed to the U.S. Court of Appeals for the Federal Circuit—was wrongly decided. The interpretation of the statute proposed by the *Kwong* court and Plaintiffs is at odds with its plain language. Section 7508A(d), entitled "Mandatory 60-day extension," postpones certain tax-related deadlines from the "earliest incident date" until 60 days after the "latest incident date . . . specified" in the relevant

Presidential disaster declaration. Because the COVID-19 disaster declarations specified only a single date ("beginning on January 20, 2020, and continuing"), the mandatory postponement period started on that date and ended 60 days later, on March 20, 2020. Plaintiffs' erroneous interpretation would treat the word "continuing" in the President's declarations as a "specified" date (which it is not) and would consider a May 2023 notice by the Federal Emergency Management Agency ("FEMA") that closed the COVID-19 "incident period" as amending the President's earlier disaster declarations (which it did not and could not). Beyond lacking support in the statutory text, Plaintiffs' proposed statutory interpretation would frustrate Congress's stated purpose of providing taxpayers with more certainty over their tax obligations during major disasters—and would also lead to the absurd result of giving the FEMA Administrator more control over tax administration than the Secretary of the Treasury. Finally, even if Plaintiffs' interpretation of Section 7508A(d) were correct, they still fail to state a claim because a postponement under this provision cannot exceed one year, and even a one-year postponement of the relevant tax deadlines would not entitle Plaintiffs to any relief.

Because Plaintiffs' case depends entirely on an incorrect interpretation of Section 7508A(d), the Complaint must be dismissed for failure to state a claim.

## BACKGROUND

### A. Plaintiffs' Tax Year 2021 Return and Refund

Plaintiffs are a married couple who reside in New York City. ECF No. 1 ("Compl.") ¶ 9. According to the Complaint, Plaintiffs filed a joint federal income tax return for tax year 2021 on October 7, 2022.[1] *Id.* Because they had overpaid their taxes, they received a refund (*i.e.*, an

[1] Taxpayers can receive an automatic six-month extension of the April 15 income tax filing deadline to October 15 upon request. *See* Compl. ¶ 37 n.14 (citing 26 C.F.R. § 1.6081-4). Plaintiffs

overpayment amount) from the IRS with respect to that return a few weeks later, on November 17, 2022. *Id.* The IRS did not pay Plaintiffs any interest on their tax refund. *Id.* Plaintiffs allege that the interest they would be owed if they prevailed in this suit does not exceed $10,000, including compounding. *Id.* ¶ 10.[2]

**B. The Statutory Framework for Calculating Overpayment Interest**

Section 6611(a) of the Internal Revenue Code establishes the default rule that the United States must pay taxpayers interest on federal tax overpayments. *See id.* ¶ 18. For individual taxpayers like Plaintiffs, overpayment interest begins to accrue on the later of (i) the date the overpayment was made (*i.e.*, when the amount of tax paid exceeds the tax liability owed), or (ii) the unextended filing deadline for the return. 26 U.S.C. § 6611(b)(1)-(2); *id.* § 6513(b)(1)-(2); 26 C.F.R. § 301.6611-1(b)(d); *see* Compl. ¶ 19.

Several provisions of the Internal Revenue Code limit the IRS's obligation to pay overpayment interest. *See* Compl. ¶¶ 20-23 (defining these as the "Interest-Limiting Exemptions"). These include the "Late Filing Rule," set forth at 26 U.S.C. § 6611(b)(3), which provides that when a tax return is filed late, no overpayment interest accrues until the return is filed. *See id.* ¶ 21. And under several other exemptions, the IRS owes no interest (or the amount owed is reduced) if the IRS refunds an overpayment within a prescribed period. *See id.* ¶¶ 22-23 (defining Section 6611(e)(1)-(3) as the "45-Day Rules" and Section 6611(e)(4) as the "180-Day Rules"); 26 U.S.C. §§ 6611(e)(1)-(4). For example, the IRS does not owe interest if it refunds an overpayment within 45 days of either the deadline for filing the return (ignoring extensions) or the date the return is

---

do not allege that the COVID-19 pandemic affected their ability to file their 2021 tax return or that the timing of their filing was due to anything other than this standard extension.

[2] The Little Tucker Act waives the federal government's sovereign immunity only over certain claims against the United States "not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2). *See* Compl. ¶ 12.

filed. 26 U.S.C. § 6611(e)(1). These exemptions are "broad" and in practice "result in the IRS not paying overpayment interest to most taxpayers." Compl. ¶ 4.

### C. Calculation of Plaintiffs' Overpayment Interest

Plaintiffs seek the overpayment interest that the IRS would have paid on their 2021 refund if the Interest-Limiting Exemptions did not apply. *See* Compl. ¶¶ 7-8, 76. Citing the default rule in Section 6611(a), Plaintiffs claim the interest that accrued on their overpayment from April 15, 2022, when their 2021 tax return was originally due, until approximately November 17, 2022, when they received their tax refund.[3] *See* Compl. ¶¶ 9. But the IRS did not owe any interest on Plaintiffs' overpayment on account of the Interest-Limiting Exemptions, because Plaintiffs received their refund on November 17, 2022—41 days after they filed their return on October 7, 2022—*i.e.*, within the 45-day window created by Section 6611(e)(1).

### D. The Class Action Complaint

Plaintiffs filed their Complaint on February 9, 2026. ECF No. 1. The Complaint proposes a class of all qualified taxpayers who filed a federal tax return "whose time prescribed for filing that return (without regard to extensions that began after May 11, 2023) overlapped [with] the period from January 20, 2020 through July 10, 2023"; "who filed that return by the filing deadline that would result from tolling the period from January 20, 2020 through July 10, 2023"; and who received a refund for that return that would have accrued up to $10,000 of interest if the Interest-Limiting Exemptions did not apply. Compl. ¶ 59. According to Plaintiffs, IRS statistics suggest

[3] As Plaintiffs note in their Complaint, accrual of overpayment interest ends somewhat earlier than the date of the refund check to account for the transmission of the payment from the IRS to the taxpayer. *See* Compl. ¶ 42 n.17 (citing 26 U.S.C. § 6611(b)(2)). This "back-off period" is typically four or six business days, depending on the method of payment. *See id.* The exact end date of interest accrual on Plaintiffs' 2021 refund is irrelevant to the outcome of this motion.

this class may include millions of taxpayers. *Id.* ¶ 62. Plaintiffs have not yet moved for class certification.

Plaintiffs bring a single claim on behalf of themselves and their putative class—a Little Tucker Act claim seeking the interest they allege IRS was required to pay them because Section 7508A(d) suspended the Interest-Limiting Exemptions for returns due and filed between January 20, 2020, and July 10, 2023. *Id.* ¶¶ 59, 71-77.

### E. Congress Enacts Section 7508A to Provide Tax-Related Relief in Connection with Federally Declared Disasters

In 1997, Congress enacted Section 7508A granting the Secretary of the Treasury the discretion to "postpone" tax-related deadlines in the case of taxpayers "affected by a Presidentially declared disaster." Taxpayer Relief Act of 1997, Pub. L. No. 105-34, tit. IX, § 911(a), 111 Stat. 788, 877; *see* Compl. ¶ 27. Since its amendment in 2002, the statute has provided that discretion as follows:

> In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster (as defined by section 165(i)(5)(A)) . . . , the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—
>
> (1) whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor (determined without regard to extension under any other provision of this subtitle for periods after the date (determined by the Secretary) of such disaster or action),
>
> (2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and
>
> (3) the amount of any credit or refund.

26 U.S.C. § 7508A(a); *see* Compl. ¶¶ 27-28. A "federally declared disaster" is defined as "any disaster subsequently determined by the President of the United States to warrant assistance by the Federal Government under the Robert T. Stafford Disaster Relief and Emergency Assistance Act

[(the "Stafford Act"), 42 U.S.C. §§ 5121-5207]." 26 U.S.C. § 165(i)(5)(A). Thus, for taxpayers affected by such disasters, Section 7508A(a)(1) allows the IRS to postpone for up to one year the deadlines for certain tax-related "acts," including "[f]iling any return of income, estate, gift, employment, or excise tax." 26 U.S.C. § 7508(a)(1)(A); *see* Compl. ¶¶ 27-28.

Section 7508A also provides "special rules for overpayments," by incorporating 26 U.S.C. § 7508(b), which in turn states that for certain taxpayers who file timely tax returns "subsections (b)(3) and (e) of section 6611 [the Interest-Limiting Exemptions] shall not apply," *id.* § 7508(b)(2).[4] *See* Compl. ¶¶ 25-27. That is, the statute suspends the Interest-Limiting Exemptions for any taxpayer whose time to file a tax return is postponed under Section 7508A as a result of a federally declared disaster. *See id.* ¶ 29.

### F. Congress Adds a Mandatory 60-Day Postponement Under Section 7508A(d)

In December 2019, Congress added a new subsection—then denominated subsection (d)—to Section 7508A. *See* Taxpayer Certainty and Disaster Tax Relief Act of 2019, Pub. L. No. 116-94, div. Q, tit. II, § 205(a), 133 Stat. 3226, 3245. Although this provision has since been amended, the later amendment was not retroactive and thus the 2019 version is the operative version for disasters declared in 2020, *see id.* § 205(b), 133 Stat. at 3246, including the COVID-19 pandemic disaster. *See* Compl. ¶ 30. Titled "[m]andatory 60-day extension," this version states in relevant part:

> In the case of any qualified taxpayer, the period—
>
> > (A) beginning on the earliest incident date specified in the declaration to which the disaster area . . . relates, and
> >
> > (B) ending on the date which is 60 days after the latest incident date so specified,

[4] Section 7508(b) also provides that "[s]ubsection (a) shall not apply for purposes of determining the amount of interest on any overpayment of tax." 26 U.S.C. § 7508(b)(1).

> shall be disregarded in the same manner as a period specified under subsection (a).

26 U.S.C. § 7508A(d)(1) (Supp. I 2020) (effective for disasters declared between December 21, 2019, and November 15, 2021);[5] *see* Compl. ¶ 27. A "qualified taxpayer" includes any taxpayer whose principal residence or principal place of business is located in a declared disaster area. 26 U.S.C. § 7508A(d)(2).

Thus, subsection (d) gives taxpayers in federally declared disaster areas an automatic postponement—from "the earliest incident date specified in the [disaster] declaration" until "60 days after the latest incident date so specified"—of the same tax deadlines that the IRS can discretionarily postpone for up to one year under subsection (a).[6] *See Abdo v. Comm'r*, 162 T.C. 148, 169 (2024). According to the House of Representatives' Ways and Means committee, subsection (d) was added in the "belie[f] that the certainty and additional time provided by an automatic extension of filing deadlines for taxpayers affected by Federally declared disasters will ease the burden of tax compliance for taxpayers dealing with the hardship of disaster recovery." H.R. Rep. No. 116-379, at 99 (2020).

Congress later amended section 7508A for disasters declared after November 15, 2021. *See* Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, div. H, § 80501(a)(1)-(3), 135 Stat. 429, 1335 (2021). Among other substantive changes, the automatic postponement under Section 7508A(d) was amended to provide that the postponement period "end[s] on the date which

---

[5] Except where otherwise indicated, all references herein to Section 7508A(d) and its subdivisions are to this version of the statute.

[6] Plaintiffs argue that Section 7508A(d) tolls rather than postpones these deadlines. Compl. ¶ 55. The Court need not address that issue at this juncture because, while it may affect the size of the putative class, *see id.* ¶ 56, it does not affect whether Plaintiffs are themselves entitled to interest on their tax year 2021 refund. *See Kwong*, 179 Fed. Cl. at 389 (declining to reach "whether the statute provides for tolling or a postponement period," as issue was not material to the plaintiff's claims).

is 60 days after the later of such earliest incident date described in subparagraph (A) or the date such declaration was issued." 26 U.S.C. § 7508A(d)(1)(B) (Supp. III 2022). A 2025 amendment prospectively changed "60 days" to "120 days" and moved the relevant provision to subsection (e). *See* Filing Relief for Natural Disasters Act, Pub. L. No. 119-29, § 2, 139 Stat. 471, 471-72 (2025).

### G. The COVID-19 Pandemic Disaster

About a month after Congress enacted the "[m]andatory 60-day extension" in section 7508A(d), the global COVID-19 pandemic began. As the gravity of the pandemic became apparent, the President declared a nationwide "emergency" on March 13, 2020.[7] *See* Compl. ¶ 31. Meanwhile, over several days in late March 2020, the President issued substantively identical letters declaring major disasters under the Stafford Act for every state, territory, and tribal land in the United States (the "COVID Disaster Declarations"). *See id.* ¶¶ 32-33. The President stated in each of these declarations that his determination was based on "emergency conditions in [the particular state, territory, or tribal land] resulting from the Coronavirus Disease 2019 (COVID–19) pandemic *beginning on January 20, 2020, and continuing*." *E.g.*, *New York; Major Disaster and Related Determinations*, 85 Fed. Reg. 20702 (emphasis added). The COVID Disaster Declarations did not specify any other date. For each of the declarations, FEMA later published a notice that reprinted the President's declaration and provided additional, agency-supplied information. *See, e.g.*, 85 Fed. Reg. 20699-705 (Apr. 14, 2020) (publishing "Notice[s]" of "Major Disaster and Related Determinations" for ten states).

[7] Letter from President Donald J. Trump on Emergency Determination Under the Stafford Act (Mar. 13, 2020), *available at* https://trumpwhitehouse.archives.gov/briefings-statements/letter-president-donald-j-trump-emergency-determination-stafford-act/ (last accessed Aug. 20, 2026); *see also* Proclamation No. 9994, *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15337 (Mar. 13, 2020).

Nearly three years later, FEMA published a notice announcing that "the incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023" and that "[e]ligibility of work and costs reimbursable through Public Assistance funding will end on this date." *Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures*, 88 Fed. Reg. 8884 (Feb. 10, 2023); *see* Compl. ¶ 35. This notice's "Summary" states that it "amends the notices of major disaster declarations and related determinations resulting from the [COVID-19] pandemic beginning on January 20, 2020," and it cites the state- and territory-specific FEMA notices and their amendments by internal agency docket numbers. 88 Fed. Reg. at 8884-86.

**H. The IRS's Response to the COVID-19 Pandemic Disaster**

Over the course of the pandemic, the IRS, pursuant to the discretionary authority of the Secretary of the Treasury under Section 7508A(a), extended certain tax deadlines. *See* Compl. ¶¶ 37-38, 43. The IRS postponed the April 15, 2020 deadline to file returns and make payments of income tax for tax year 2019 until July 15, 2020, IRS Notice 2020-18 (Mar. 21, 2020), and postponed the deadline for individual taxpayers to file returns and make payments of income tax for tax year 2020 until May 17, 2021, IRS Notice 2021-21 (Mar. 31, 2021). The IRS also promulgated a regulation, 26 C.F.R. § 301.7508A-1, related to its Section 7508A(d) authority. *See* Compl. ¶¶ 47-48. That regulation, finalized on June 11, 2021, provided, as relevant here, that "[i]n no event will the mandatory 60-day postponement period be calculated to exceed one year." 26 C.F.R. § 301.7508A-1(g)(3)(ii)(A).[8]

[8] The United States Tax Court has invalidated other provisions of this regulation, which effectively rendered the "mandatory" postponement under subsection (d) discretionary. *See Abdo*, 162 T.C. at 168 (invalidating 26 C.F.R. § 301.7508A-1(g)(1) and (2)); Compl. ¶¶ 48-49 (referencing *Abdo* decision).

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) challenge for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A motion to dismiss should be granted where a complaint only alleges facts that, "however true[,] could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. While well-pleaded factual allegations are assumed true on a motion to dismiss, legal conclusions are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

Plaintiffs' claim to unpaid overpayment interest fails as a matter of law because it depends on an incorrect reading of Section 7508A. Under its plain language, Section 7508A(d) provided for a mandatory postponement of certain deadlines of 60 days, not more than three and a half years. The *Kwong* court's contrary interpretation is incorrect, resting on several significant errors. Further, the context and history of the statute reinforce what the plain text says—Congress did not intend the dramatic result that Plaintiffs urge on this Court. Finally, even if the Court were to accept Plaintiffs' view of Section 7508A(d), Section 7508A(a) separately caps the length of a mandatory postponement at one year—too short to entitle Plaintiffs to any relief.

### I. Under Its Plain Text, Section 7508A(d) Did Not Trigger a 3.5-Year Extension of Tax Return Filing Deadlines

Statutory interpretation begins with the statute's plain text, "giving the statutory terms their ordinary or natural meaning." *Rivera-Perez v. Stover*, 171 F.4th 196, 201 (2d Cir. 2026). And "[w]hen the language of a statute is unambiguous, 'judicial inquiry is complete.'" *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020) (quoting *Conn. Nat'l Bank v. Germain*,

503 U.S. 249, 254 (1992)); *see Lee v. Bankers Tr. Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous."). Here, the plain language of subsection (d) created a mandatory 60-day postponement of filing deadlines, not a three-and-a-half-year one.

Subsection (d), entitled "Mandatory 60-day extension," provides that "the period [] beginning on the *earliest incident date specified in the declaration* to which the disaster area . . . relates, and [] ending on the date which is 60 days after the *latest incident date so specified*, shall be disregarded in the same manner as a period specified under subsection (a)." 26 U.S.C. § 7508A(d) (emphases added). The parties agree that January 20, 2020, is the "earliest incident date specified" in the COVID Disaster Declarations. *See* Compl. ¶ 53. The question is what is "the latest incident date so specified" in the declarations, which starts the 60-day period after which the mandatory postponement period ended.

Plaintiffs claim "[t]here was a federally declared disaster under the Stafford Act in all U.S. states and territories, and the District of Columbia from January 20, 2020 through May 11, 2023" and accordingly a "mandatory tolling period that ran from January 20, 2020 through July 10, 2023" pursuant to Section 7508A(d). *Id.* They are wrong. Section 7508A(d) looks to the President's disaster declaration, and the COVID Disaster Declarations state only that there was a disaster "beginning on January 20, 2020, and continuing." 85 Fed. Reg. at 20702. "[C]ontinuing" is not a date. Both "the earliest incident date specified in the declaration" and "[t]he latest incident date so specified" are January 20, 2020, and therefore the mandatory postponement period ended 60 days later on March 20, 2020.

Subsection (d) does not require that a disaster declaration contain two separate dates. Rather, the statute refers explicitly to the "earliest incident date specified in the declaration" and

the "latest incident date so specified." 26 U.S.C. § 7508A(d). Congress's choice of language reflects an intent for the postponement period to be anchored to dates in a single disaster declaration. Where such a declaration specifies only one date in connection with a disaster, that date is both "the earliest incident date specified in the declaration" and "the latest incident date so specified."[9] 26 U.S.C. § 7508A(d)(1); *cf. Abdo*, 162 T.C. at 157 n.7 (noting taxpayers' uncontested position "that, because January 20, 2020, is the only incident date specified in the Ohio Disaster Declaration, it is both the earliest and latest specified date"). The plain text of Section 7508A(d) requires a definite, "specified" date; the "[m]andatory 60-day extension" period thus started on the sole date specified in the declarations (January 20, 2020) and ended 60 days later.

By tying the postponement period to the earliest and latest dates specified in a Presidential declaration, Congress accounted for disaster declarations that specify more than one incident date, as many do. *See, e.g.*, 86 Fed. Reg. 63045 (Nov. 15, 2021) (notices reprinting Presidential declarations of weather-related disasters for New Hampshire and New York that specify "the period of July 29 to July 30, 2021," and "the period of August 18 to August 19, 2021," respectively). But by nowhere requiring different earliest and latest dates, Congress accounted, too, for the also-common circumstance of a disaster declaration that specifies only a single incident date. *See, e.g.*, 85 Fed. Reg. 18580 (Apr. 2, 2020) (notice reprinting Presidential declaration of disaster for Tennessee resulting from severe weather "on March 3, 2020").

---

[9] Because the term "incident date" is not defined in the Internal Revenue Code, the Stafford Act, or IRS or FEMA regulations, the ordinary meaning of that phrase controls. *See, e.g.*, *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021) ("Where Congress does not furnish a definition of its own, we generally seek to afford a statutory term 'its ordinary or natural meaning.'"); *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) ("As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (internal quotation marks and alterations omitted)).

Moreover, Congress conspicuously made no special provision for disaster declarations that describe an ongoing disaster by specifying a single incident date followed by the words "and continuing," which was a long-established practice when Congress enacted Section 7508A(d) in 2019. *See, e.g.*, 70 Fed. Reg. 53803 (Sept. 12, 2005) (notice reprinting Presidential declaration of disaster for Louisiana "beginning on August 29, 2005, and continuing," due to Hurricane Katrina).

Under the plain language of Section 7508A(d)(1) as applied to the COVID Disaster Declarations, the mandatory postponement period began on January 20, 2020, and ended 60 days later, on March 20, 2020.[10]

## II. *Kwong* Was Wrongly Decided and Should Not Be Followed by This Court

In *Kwong v. United States*, a judge of the U.S. Court of Federal Claims addressed the impact of Section 7508A(d) and the COVID Disaster Declarations on a taxpayer's deadline to sue for a refund of tax penalties, and reached a different conclusion. 179 Fed. Cl. at 387-89. While Plaintiffs cite *Kwong* in their Complaint and presumably intend to rely on its reasoning, Compl. ¶¶ 6, 51, that decision was wrongly decided and should not be followed by this Court.[11]

In *Kwong*, the Government moved for summary judgment to dispose of a taxpayer's untimely refund suit because it was filed more than two years after the IRS mailed the taxpayer his claim disallowance notice. 179 Fed. Cl. at 384-85. Because this occurred during the COVID-19 pandemic, the taxpayer argued that, in light of the federally declared disaster, Section 7508A(d)

---

[10] The heading of subsection (d), "Mandatory 60-day extension," 26 U.S.C. § 7508A(d), also demonstrates that Congress intended a limited and defined postponement period, not an indefinite one. *See Dubin v. United States*, 599 U.S. 110, 121 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks and citation omitted)).

[11] The Government has appealed the *Kwong* decision to the U.S. Court of Appeals for the Federal Circuit, and that appeal is currently pending. *See Kwong v. United States*, No. 26-1843 (Fed. Cir. filed May 20, 2026).

postponed all filing deadlines that fell between January 20, 2020, and July 10, 2023, *i.e.*, 60 days after the end of the "incident period" specified in the February 2023 FEMA notice. *See id.* at 386-87. The court agreed, rejecting as "unpersuasive" the Government's argument that "only the January date was 'specified' according to the statute," because "[i]f the emergency declaration was intended to include only January 20, 2020, the declaration would not have also said, 'and continuing.'" *Id.* at 388. The *Kwong* court relied on Congress's 2021 amendment of Section 7508A(d), reasoning that the amendment—which changed how the end date of the mandatory postponement period was calculated—"implies that Congress changed the statute's meaning; otherwise, Congress could have left the statute's text as it was." *Id.* (citing *Burfkin v. Collins*, 604 U.S. 369, 386 (2025)). The *Kwong* court also rejected the Government's argument that interpreting the statute this way would cause widespread "uncertainty in tax administration" and give the FEMA Administrator inappropriate and unintended authority over tax matters, reasoning that its holding would have only a limited impact. *Id.* at 389 (cleaned up).

*Kwong*'s holding is inconsistent with the text, structure, and history of Section 7508A, and rests on several key errors. First, *Kwong* counter-textually concluded that interpreting the word "continuing" in the COVID Disaster Declarations as a "specified" "date" was necessary to avoid surplusage. But the President's declarations did not primarily concern tax matters, and the term "continuing" has important meaning in the context of the federal disaster assistance efforts that were the declarations' principal focus. Second, building on this error, *Kwong* held that the mandatory postponement period in Section 7508A lasted until 60 days after FEMA administratively closed the incident period. But that interpretation improperly looks beyond the Presidential COVID Disaster Declarations, contrary to the language of Section 7508A, and relies on an administrative term of art ("incident period") that Congress chose not to use in Section

7508A. Third, *Kwong* misinterpreted the import of the 2021 amendment to Section 7508A(d). This amendment supports the Government's position and was made not in order to limit the postponement's (already-time-limited) length but for another purpose.

### A. *Kwong* Was Wrong to Interpret "Continuing" as a Date and to Ignore "So Specified"

As noted above, "continuing" is not a date. And if there were any doubt that the statute required an actual date, its use of the words "so specified" dispels it.

*Kwong* arrived at its atextual reading by concluding that the word "continuing" in the COVID Disaster Declarations must have independent import with respect to the tax postponement at issue. 179 Fed Cl. at 388. Although the disaster declarations are not statutes, and thus the canon against surplusage does not apply to them (as explained below), the *Kwong* court incorrectly based its analysis on that canon. *Id.* at 388. But even if that canon applied to the COVID Disaster Declarations, there would be no surplusage here because the declarations were not solely, or indeed even principally, about tax deadlines. Rather, the declaration of a "continuing" disaster under the Stafford Act authorizes FEMA to provide ongoing financial and direct assistance to persons affected by a declared disaster. These assistance programs have application deadlines, many of which are tied to FEMA's determination of the "incident period." *See generally* 42 U.S.C. § 5177; 44 C.F.R. § 206.32(f). Thus, the President's description of a disaster as "continuing" has significant meaning for FEMA's provision of disaster aid and recovery assistance in that it authorizes FEMA to determine the incident period's end date. Indeed, FEMA's February 2023 notice that the COVID-19 "incident period" has closed explains that "Public Assistance funding will end on this date"—and makes no reference to taxes. 88 Fed. Reg. 8884. Given the multifaceted nature of a Presidential disaster declaration, which is primarily directed at unlocking federal

emergency management assistance, there is no need to try to find a meaning for every word specifically with respect to tax deadlines under Section 7508A(d).

Although the duration and nationwide effects of the COVID-19 pandemic disaster were unprecedented, the declarations' description of a "continuing" disaster was not. Again, when Congress enacted section 7508A(d) in 2019, federal disaster declarations had often used the word "continuing" in conjunction with a specified date when describing an ongoing disaster. For example, after Hurricane Katrina, the President declared a major disaster in Louisiana "beginning on August 29, 2005, and continuing." 70 Fed. Reg. 53803 (Sept. 12, 2005). Congress is presumed to have known of this practice, and the fact that it did not enact a special provision for declarations referencing "continuing" disasters means that such declarations should be treated under the ordinary language of Section 7508A(d).

Additionally, *Kwong* was wrong to apply the surplusage canon to a non-statutory document—a Presidential disaster declaration—especially by reaching a result that is inconsistent with the actual text of Section 7508A. Even when properly used to construe a statute, however, canons of construction cannot override plain statutory text. *See, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). Unlike "the language of a statute," courts have cautioned that other types of documents "must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) (internal quotation marks omitted) (regarding construing Supreme Court opinions). The context here—providing federal emergency management assistance to those affected by the COVID-19 pandemic—was not primarily about tax deadlines.

*Kwong* also ignored the statutory phrase "so specified"—as in "the latest incident date *so specified*." Instead of considering the full language of this clause, *Kwong* disregarded Congress's requirement that the mandatory postponement be calculated by reference to the earliest and latest

dates actually *specified* in the presidential declaration (which can be the same date). Ignoring that vital term "eviscerate[s] . . . significant aspects of the statutory text," which courts should generally avoid—as it violates the (applicable here) canon against surplusage. *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 737 (2022); *see also Polselli v. IRS*, 598 U.S. 432, 441 (2023) (court should "ordinarily aim to 'giv[e] effect to every clause and word of a statute'" (quoting *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91, 106 (2011))).

### B. *Kwong* Improperly Conflated a "Incident Date" in a Presidential Declaration with a FEMA "Incident Period"

*Kwong*'s second major error was interpreting the tax postponement period as ending 60 days after FEMA closed the "incident period." In its misguided attempt to give "meaning" in the tax context to the declarations' use of "and continuing," the *Kwong* court improperly treated FEMA's subsequent determination of a May 11, 2023 closing date for the disaster's "incident period" as the latest "incident date" for purposes of Section 7508A(d). *Kwong*, 179 Fed. Cl. at 387. This too was a mistake.

To begin, Section 7508A(d) says nothing about an "incident period," much less any post-declaration administrative determination by FEMA. The statute refers instead to the earliest and latest "incident date specified in the declaration" of the disaster by the President. 26 U.S.C. § 7508A(d)(1); *see id.* § 7508A(a), (d)(3) (incorporating Section 165(i)(5)(A)'s definition of "federally declared disaster" as "any disaster subsequently determined by the President of the United States . . . under the [Stafford] Act"). Although FEMA's administrative determination of a disaster's "incident period" is important to that agency's provision of disaster-relief assistance under the Stafford Act, it is irrelevant to Section 7508A(d).

Indeed, when Congress enacted Section 7508A(d), it not only understood the distinction between a President's disaster declarations and FEMA's separate determination of the associated

"incident period," but purposefully chose *not* to tie the mandatory postponement period to the FEMA-determined incident period. We know this because as part of the same legislation that enacted Section 7508A(d), Congress included *twenty other* tax-relief provisions with timeframes that were tied to the "incident period"—defined as "the period specified by the Federal Emergency Management Agency as the period during which such disaster occurred." Taxpayer Certainty and Disaster Tax Relief Act of 2019, § 201(4), 133 Stat. at 3236 (defining "incident period"); *id.* §§ 201(1), 202(a)(4)(A)(i)-(ii), 202(b)(2)(C)-(3), 202(c)(2)-(3), 203(b)(1)(A)-(B), 203(b)(3)(B), 204(b)(3), 204(c)(2)-(3), 207(c)(1), 133 Stat. at 3236, 3238-42, 3244, 3246 (using "incident period"). Moreover, this definition's reference to "such disaster" means "the disaster by reason of which a major disaster was declared" "*by the President* under section 401 of the [Stafford] Act." *Id.* § 201(1), (3), 133 Stat. at 3236 (emphasis added).

Thus, Congress's use of the unique term "incident date" in Section 7508A(d), while tying other types of disaster-related tax relief to the FEMA-determined "incident period," reflects an intentional legislative decision to tie the mandatory postponement period at issue to dates specified in the President's declaration *rather than* dates determined by FEMA. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Salinas v. United States R.R. Ret. Bd*., 592 U.S. 188, 196 (2021) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see, e.g.*, *Patel v. Garland*, 596 U.S. 328, 341 (2022) ("Had Congress intended instead to limit the jurisdictional bar to 'discretionary judgments,' it could easily have used that language—as it did elsewhere in the immigration code.").

To reach its incorrect conclusion that the FEMA-determined end date of the "incident period" was an "incident date specified in the [Presidential] declaration," *Kwong* treated FEMA's

May 2023 notice as "amending" the President's COVID Disaster Declarations from three years earlier. *See Kwong*, 179 Fed. Cl. at 387 ("The pandemic emergency declaration was later amended to end on May 11, 2023"). Plaintiffs adopt this same conceit. *See* Compl. ¶¶ 5, 35 ("The Stafford Act Disaster Declarations were amended multiple times. The final amendment specified the ending incident date."). But there is no reason to believe that the FEMA notice was meant to amend the Presidential disaster declarations, and even if it had, FEMA lacked the authority to do so.

Although FEMA's notice clearly purported to "amend" something, a careful reading reveals that it was most likely intended to amend *FEMA's own notices* of the President's disaster declarations—*i.e.*, the 2020 notices in which FEMA reprinted the declarations—rather than the declarations themselves. 88 Fed. Reg. at 8884-86. While the agency once describes its list of jurisdiction-by-jurisdiction amendments as a list of "amendments to the COVID-19 major disaster declarations," *id.* at 8884, that is inconsistent with the accompanying list of amendments, which are each described as an "Amendment" to an agency "*Notice* of a Major Disaster Declaration." *Id.* at 8884-86 (emphasis added).[12] The only other reference to any amendment, in the 2023 notice's "Summary," indicates that the agency is "amend[ing] the *notices* of major disaster declarations and related determinations resulting from the . . . pandemic beginning on January 20, 2020." *Id.* at 8884 (emphasis added). The 2023 notice is thus best understood as merely amending FEMA's own initial notices of the disaster declarations, as consistent with FEMA's usual practice. *See, e.g.*, 70 Fed. Reg. 53802 (Sept. 12, 2005) (publishing two "notice[s] amend[ing] the notice of a major disaster" for two different disasters in Florida).

[12] *See, e.g.*, 85 Fed. Reg. 20699-705 (Apr. 14, 2020) (FEMA "Notice[s]" of "Major Disaster and Related Determinations" for ten states).

Furthermore, FEMA lacks authority to issue or amend a Presidential disaster declaration. *See* 42 U.S.C. § 5170; 44 C.F.R. § 206.38. Although the President has delegated many Stafford Act functions to FEMA, these do not include declaring a major disaster. *See* Exec. Order No. 12673 § 1, 54 Fed. Reg. 12571, 12571 (Mar. 23, 1989).

In any event, even if FEMA's 2023 notice could have amended the President's 2020 COVID Disaster Declarations, Section 7508A(d) depends only on the declarations as originally issued. Otherwise, the duration of an automatic postponement under Section 7508A(d) would never be certain as Congress intended. *See* H. Rep. No. 116-379, at 99. And the FEMA Administrator—who could in this scenario repeatedly postpone the "latest incident date" of a disaster declaration for tax purposes—would illogically have greater power over tax deadlines than the Secretary of the Treasury.

### C. *Kwong* Drew an Incorrect Conclusion from Congress's 2021 Amendment of Section 7508A(d)

The *Kwong* court also misapprehended the effect of the 2021 amendment of Section 7508A. *See* 179 Fed. Cl. at 388. This amendment changed the end of the tax postponement period from "60 days after the latest incident date" to "60 days after the later of [the] earliest incident date . . . or the date [the] declaration was issued." 26 U.S.C. § 7508A(d)(1)(B) (Supp. III 2022). By no longer tying the end of the period to the declaration's latest incident date, the 2021 amendment precluded even the argument that a "continuing" disaster could result in an indefinite postponement until FEMA closed the incident period. But contrary to *Kwong*'s reasoning, it does not follow that the applicable pre-2021 statute necessarily allowed such a postponement. For the reasons explained above, the plain text of the pre-2021 version did *not* allow this.

Although the *Kwong* court rejected this reading as rendering the 2021 amendment without effect, that is not so. If the 2021 amendment had been in force at the time of the COVID Disaster

Declarations, the postponement period for the California declaration at issue in *Kwong* would have begun on March 22, 2020 (the date of the declaration) and ended 60 days later on May 21, 2020. Under the pre-2021 statute that was actually in effect, because of the delay between the onset of the pandemic disaster and the COVID Disaster Declarations, the period began instead on January 20, 2020 (the earliest specified incident date in the declaration), and ended on March 20, 2020, two days *before* the disaster was declared. The 2021 amendment thus was most likely directed at ensuring that postponements for future disasters would provide prospective (*i.e.*, post-declaration) relief, not at fixing a nonexistent flaw allowing for indefinite postponements. And if Congress believed that the prior version of subsection (d) could have resulted in indefinitely long tax extensions, it could have made the 2021 amendment retroactive, which it did not.

## III. The Context and History of Section 7508A Also Demonstrate that It Did Not Create a Massive Automatic Postponement of Tax Deadlines

The plain text of the statute and the COVID Disaster Declarations demonstrate that Section 7508A created a postponement of far more limited scope than Plaintiffs contend. Other factors—including the statute's context and legislative history—lead to the same conclusion.

### A. Plaintiffs' Interpretation of the Statute Conflicts with Congress's Intent to Provide Certainty to Taxpayers

The legislative history emphasizes the "certainty" that the automatic postponement under Section 7508A(d) would provide taxpayers. This goal is emphasized in the very title of the legislation that added this provision, the "Taxpayer Certainty and Disaster Tax Relief Act of 2019." The House Ways and Means Committee explained that it "believe[d] that the certainty and additional time provided by an automatic extension of filing deadlines for taxpayers affected by Federally declared disasters will ease the burden of tax compliance for taxpayers dealing with the hardship of disaster recovery." H. Rep. No. 116-379, at 99. Relying on the date, or dates, contained in the relevant disaster declaration provides that certainty by allowing taxpayers to know both the

beginning and the end of the mandatory postponement period as soon as the relevant declaration is made.

Plaintiffs' proposed reading of Section 7508A, conversely, would make the duration of the automatic postponement for a "continuing" disaster unknowable at the time the disaster is declared and subject to later change by the FEMA administrators who determine the end of the "incident period" for such a disaster. Suggesting that taxpayers should wait for an indefinite disaster to come to an official conclusion in order to know whether they missed their tax deadlines was not Congress's intent. But Plaintiffs' proposal would create just such uncertainty.

That uncertainty continues to this date. The *Kwong* court dismissed the possibility that its interpretation of the statute would cause "uncertainty in tax administration for all taxpayers from January 2020 to July 2023," reasoning that "[t]he years that have passed since the end of the covid-19 disaster declaration make it unlikely that many taxpayers would still be able to bring a timely claim based on the 2019 statute." 179 Fed. Cl. at 389 (cleaned up). But this case, as well as the many others that have been filed in the wake of *Kwong*, belie that incorrect assumption.[13] Indeed, this question of statutory interpretation has major ramifications for the public fisc, with tens of millions of taxpayers potentially affected and billions of dollars at stake.[14]

---

[13] *See, e.g.*, *W. Digital Corp. v. United States*, No. 26-cv-00215 (Fed. Cl. filed Feb. 6, 2026); *Oliff v. United States*, No. 26-cv-00561 (N.D. Tex. filed Feb. 20, 2026). Taxpayers have also raised arguments that rely on *Kwong*'s interpretation of Section 7508A in other litigation, including in criminal cases. *See, e.g.*, *United States v. Goldstein*, No. 25-cr-00006-LKG, ECF No. 487 (D. Md. filed Mar. 24, 2026) (raising argument in motion seeking acquittal or a new trial); *Singh v. United States*, No. 25-cv-00056-AMD-TAM, ECF No. 17 (E.D.N.Y. filed Mar. 2, 2026) (raising argument in opposition to motion to dismiss).

[14] Nat'l Taxpayer Advocate, *Tens of Millions of Taxpayers May Be Eligible for Significant Tax Refunds—If They Act on or Before July 10 (Part I)* (Apr. 30, 2026), https://www.taxpayeradvocate.irs.gov/news/nta-blog/tens-of-millions-of-taxpayers-may-be-eligible-for-significant-tax-refunds/2026/04/ (last accessed Aug. 20, 2026); Bloomberg Law

### B. Plaintiffs' Proposed Interpretation Would Give FEMA Outsized Authority over Tax Administration

Finally, Plaintiffs' proposed statutory interpretation cannot be correct because it would create an absurd statutory scheme. Under Plaintiffs' logic, Congress created a statute that allows for indefinite postponement of critical tax deadlines and gives FEMA administrators greater power over tax administration than the Secretary of the Treasury. But Congress does not "hide elephants in mouseholes." *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006).

Such a reading of the statute would run afoul of the major questions doctrine, under which courts "expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) (internal quotation marks omitted). If Congress wanted to give an agency whose only concern is emergency preparedness the power to grind tax administration to a halt by maintaining open-ended disaster periods that indefinitely suspend tax filing deadlines, it would need to have been exceedingly clear about that. Instead, Congress gave only one federal official any authority in Section 7508A—the Secretary of the Treasury is authorized in subsection (a) to postpone tax deadlines by up to one year. It would be absurd to interpret this statute as affording the FEMA Administrator far greater discretion to postpone tax deadlines. This Court should thus reject this illogical reading of the statute.

## IV. Even If the Section 7508A(d) Postponement Period Extended Beyond 60 Days, It Cannot Exceed One Year

Even if the "continuing" language in the COVID Disaster Declarations or FEMA's "incident period" closing notice could extend the mandatory tax postponement, this period would

News, *Billions in Covid-Era Tax Refunds Are at Stake as US Appeals* (May 19, 2026), https://news.bloombergtax.com/daily-tax-report/billions-in-covid-era-tax-refunds-are-at-stake-as-us-appeals (last accessed Aug. 20, 2026).

nevertheless be capped at one year because Section 7508A(d)(1) incorporates the limitations of Section 7508A(a). In this alternative universe, the postponement period could have been extended to January 2021 at the latest, and Plaintiffs would still not be entitled to any relief since the overpayment interest they claim relates to a tax return filed *in 2022*.

Section 7508A(d)(1) mandates that the postponement period "shall be disregarded *in the same manner as a period specified under subsection (a)*." 26 U.S.C. § 7508A(d)(1) (emphasis added). Section 7508A(a), in turn, authorizes the Secretary of the Treasury to disregard "a period of *up to one year*." *Id.* § 7508A(a) (emphasis added). A mandatory postponement disregarded "in the same manner as" a period specified in subsection (a) must be disregarded "in the same manner" in all material respects—including duration. As the Supreme Court explained in construing analogous "in the same manner as" language in the Internal Revenue Code, such a cross-reference gives "the Secretary the same authority and guidance" as the referred-to provision. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 545-46 (2012). To selectively incorporate the scope of acts covered by Section 7508A(a) while discarding its one-year cap would require misreading "in the same manner" to mean "only in certain respects." Thus, even under Plaintiffs' overbroad view, any extension under Section 7508A(d)(1) must incorporate subsection (a)'s one-year durational ceiling. *See* 26 C.F.R. § 301.7508A-1(g)(3)(ii)(A) ("In no event will the mandatory 60-day postponement period be calculated to exceed one year.").

*Abdo* does not hold otherwise. It held that qualified taxpayers are "entitled to an automatic 60-day postponement period starting from January 20, 2020 . . . to at least March 20, 2020." 162 T.C. at 169 (emphasis added). The tax court's use of "at least" was directed to the case before it, where the only issue was whether a petition filed on March 17, 2020, was timely—a question resolved by the 60-day minimum without any need to address the outer limits. *Id.* at 155, 169.

*Abdo* did not hold that the mandatory postponement extended beyond 60 days, and its deliberate reservation of the outer-limits question forecloses treating its holding as an endorsement of the multi-year extension Plaintiffs seek.

Nor does Section 7508A(d)(5) remove the one-year ceiling. That provision states:

> Any period described in paragraph (1) with respect to any person . . . shall be in addition to, or concurrent with, as the case may be, any period specified under subsection (a) . . . with respect to such person.

26 U.S.C. § 7508A(d)(5). A "period specified under subsection (a)" is a period the Secretary has affirmatively specified through an exercise of discretion. Section 7508A(d)(5) therefore ensures that the mandatory period is not displaced, absorbed, or reduced by the discretionary period. It does not exempt the mandatory period from the statutory limits incorporated through Section 7508A(d)(1). The one-year ceiling is not a "period specified" by the Secretary; it is a statutory maximum limiting how long any such period may be.

*Kwong* incorrectly reasoned that "manner" in Section 7508A(d)(1) referred only to "the types of actions that can be delayed." 179 Fed. Cl. at 387-88. But the court offered no textual basis for this selective incorporation. Section 7508A(d)(1) does not merely identify the types of acts to which the mandatory period applies; it provides for the mandatory period to be disregarded "in the same manner as" a period specified under subsection (a). Because Section 7508A(a) authorizes disregarding certain deadlines only for a "period of up to one year," the mandatory postponement period under Section 7508A(d)(1) for the COVID Disaster Declarations could never exceed one year from January 20, 2020.

Accordingly, even if the Court were to reject the Government's reading of Section 7508A(d), it should conclude that any postponement period could not have extended beyond January 20, 2021. And thus Plaintiffs would thus still fail to state a claim because their tax year 2021 return was not due until April 15, 2022, at the earliest, which is well outside this period.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the Court dismiss the complaint in this case due to Plaintiffs' failure to state a claim upon which relief can be granted.

Dated: August 21, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: */s/ Jennifer Jude*
JENNIFER JUDE
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Phone: (212) 637-2663
E-mail: jennifer.jude@usdoj.gov

## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,196 words.