**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARTIN FLEISHER AND ANDREA BIERSTEIN, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

UNITED STATES OF AMERICA,

*Defendant.*

Case No. 1:26-cv-01096-DEH

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. FEMA Routinely Amends "Continuing" Disaster Declarations to Specify Disasters' Latest Incident Dates, Pursuant to Presidential Delegations of Power ..... 3

II. 2019: The IRS's Failure to Provide Adequate Tax Relief Following Floods Prompts Congress to Mandate Tolling of Tax Deadlines During Federally Declared Disasters ..... 4

III. 2020: The President Issues "Continuing" Declarations Relating to the COVID-19 Disaster, But the IRS Refuses to Apply Section 7508A(d) ..... 5

IV. 2021: The IRS Promulgates a Regulation Implementing Section 7508A(d) ..... 6

V. 2021: Congress Amends Section 7508A(d) But Does Not Make the Amendment Retroactive ..... 7

VI. 2023: FEMA Amends the COVID-19 Disaster Declarations to Close the Disaster's Incident Period on May 11, 2023 ..... 8

VII. 2024 to the Present: Courts Reject the Government's Efforts to Avoid Mandatory Tolling ..... 8

VIII. 2026: FEMA Continues to Amend Presidential Disaster Declarations ..... 9

LEGAL STANDARD ..... 10

ARGUMENT ..... 10

I. FEMA's February 2023 Omnibus Notice Amended the COVID-19 Disaster Declarations ..... 10

II. FEMA Was Authorized to Amend the COVID-19 Disaster Declarations ..... 11

III. Section 7508A(d) Refers to the Latest Incident Date Specified In the Declaration *as Amended* ..... 13

A. The Plain Meaning of "the Declaration" Includes Amendments ..... 13

B. The Government's Interpretation of 7508A(d) Leads to Absurd Results Because January 20, 2020 Is Not "the Latest Incident Date" .......... 15

C. The Statutory Context Confirms that "the Declaration" Means the Declaration as Amended .......... 15

IV. The Relevant Interpretive Tools and Canons Confirm Plaintiffs' Interpretation .......... 18

A. The Government's Interpretation Would Drastically Depart from Longstanding Administrative Practice .......... 18

B. The IRS's Contemporaneous Understanding Confirms that Plaintiffs' Interpretation is Correct .......... 20

C. The "Major Questions" Doctrine Does Not Apply .......... 21

V. The Legislative History Supports Plaintiffs' Interpretation of Section 7508A(d) .......... 22

VI. Section 7508A(d)'s Mandatory Tolling Period Is Not Limited to One Year .......... 24

CONCLUSION AND REQUEST FOR LEAVE TO AMEND .......... 25

CERTIFICATE OF PAGE-LIMIT COMPLIANCE .......... 27

APPENDIX: EXAMPLES OF FEMA AMENDMENTS TO DISASTER DECLARATIONS .......... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Commissioner*,
162 T.C. 148 (2024)....................3, 7, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*Atkins v. Parker*,
472 U.S. 115 (1985)....................19, 23

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980)....................23

*El Encanto, Inc. v. Hatch Chile Co.*,
825 F.3d 1161 (10th Cir. 2016)....................14

*G. & T. Terminal Packaging Co. v. Hawman*,
870 F.2d 77 (2d Cir. 1989)....................14

*In re Soussis*,
136 F.4th 415 (2d Cir. 2025)....................16

*Internal Revenue Serv. v. Murphy*,
892 F.3d 29 (1st Cir. 2018)....................19

*Jam v. Int'l Fin. Corp.*,
586 U.S. 199 (2019)....................14

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)....................16, 18

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026)....................21

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017)....................19

*Monsalvo v. Bondi*,
604 U.S. 712 (2025)....................2, 18, 19

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
760 F.3d 151 (2d Cir. 2014)....................19

*NFIB v. Sebelius*,
567 U.S. 519 (2012)....................25

*Oliver Schools, Inc. v. Foley*,
930 F.2d 248 (2d Cir. 1991)....................25

*Patel v. Garland*,
596 U.S. 328 (2022)....................17

*Russello v. United States*,
464 U.S. 16 (1983)....................17

*Safdieh v. Comm'r of Internal Revenue*,
169 F.4th 102 (2d Cir. 2026)....................20

*Salinas v. United States R.R. Ret. Bd.*,
592 U.S. 188 (2021)....................17

*Trump v. Slaughter*,
609 U.S. 422 (2026)....................22

*United States v. Liounis*,
179 F.4th 124 (2d Cir. 2026)....................24

*United States v. Rowland*,
826 F.3d 100 (2d Cir. 2016)....................22

*United States v. Venturella*,
391 F.3d 120 (2d Cir. 2004)....................15

*West Virginia v. EPA*,
597 U.S. 697 (2022)....................21

**Statutes**

26 U.S.C. § 7508A(a)....................5, 6, 24

26 U.S.C. § 7508A(d) (2019).................... *passim*

42 U.S.C. § 5164 (Stafford Act Section 321)....................3, 12

42 U.S.C. § 5170 (Stafford Act Section 401)....................12, 16

Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80501, 135 Stat.
429, 1335 (Nov. 15, 2021)....................8, 23

Taxpayer Certainty and Disaster Tax Relief Act, as enacted in the Further
Consolidated Appropriations Act, 2020, Pub. L. No. 116–94, div. Q, tit. II, §§
201-208, 133 Stat. 2534, 3226-3247 (Dec. 20, 2019)....................5, 17

Taxpayer Relief Act of 1997, Pub. L. No. 105–34, 111 Stat. 788 (1997) ......................................5

**Regulations, Executive Orders, and Notices of Proposed Rulemaking**

44 C.F.R. § 206.32(f) ....................................................................................4, 11, 12, 19

44 C.F.R. § 206.110(d) .........................................................................................3, 11

*Delegation of Disaster Relief and Emergency Assistance Functions*, 54 Fed. Reg. 12,571 (Mar. 23, 1989) (publishing Executive Order 12673) ..........................................3, 12

IRS, *Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster*, 86 Fed. Reg. 2,607 (Jan. 13, 2021) ......................11

IRS, *Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster*, 86 Fed. Reg. 31,146, 31,151 (June 11, 2021) ..........................................................................................................7, 20

**Other Authorities**

Congressional Research Service, FEMA's Individuals and Households Program (IHP)—Implementation and Considerations for Congress (Mar. 3, 2025) ............................12

FEMA, *Disasters and Other Declarations* (last visited Nov. 10, 2026), https://www.fema.gov/disaster/declarations ...................................................................5

FEMA, *Disaster Operations Legal Reference* (Version 3.0, Jan. 20, 2017) ......................4, 10, 19

H.R. Rep. No. 116-379 (Jan. 21, 2020) .......................................................................22, 23

S. Almukhtar et al., *The Great Flood of 2019: A Complete Picture of a Slow-Motion Disaster*, NY Times (Sept. 11, 2019).............................................................4

## INTRODUCTION

In 2019, Congress enacted Section 7508A(d)(1) of the Tax Code to give relief to taxpayers impacted by disasters. That provision requires "mandatory" tolling of tax-related deadlines, from the "earliest incident date" until 60 days after the "latest incident date" that is "specified" in "the declaration" of the disaster. When deadlines are tolled by Section 7508A(d)(1), the IRS generally must pay interest on overpayments made by impacted taxpayers. *See* Compl. ¶¶ 24-29.

In spring 2020, the President declared COVID-19 to be a federal disaster, in every State and territory, "beginning on January 20, 2020, and continuing." In February 2023, the Federal Emergency Management Agency (FEMA) amended the President's declarations to specify that "the incident period for all COVID-19 major disaster declarations" would "close effective May 11, 2023." The IRS was therefore required to pay interest to Plaintiffs, who overpaid their taxes, because Section 7508A(d)(1) tolled Plaintiffs' filing deadlines from January 20, 2020, through July 10, 2023—sixty days after the "latest incident date." Every court to consider the issue—including the Eastern District of New York only seven weeks ago—has agreed that May 11, 2023 is the "latest incident date" specified in the COVID-19 disaster declarations for purposes of Section 7508A(d)(1). Those courts uniformly rejected all the Government's arguments to the contrary.

Nevertheless, the Government repeats here its contention that May 11, 2023 was not in fact the "latest incident date" that was "specified" in "the declaration[s]" of the COVID-19 disaster. The Government argues that Section 7508A(d)(1) refers only to the President's *initial* declarations, which were published in 2020, when no one knew how long the COVID-19 disaster would last. As with many past declarations for disasters that did not have a known end date at the time of the initial declaration, the President's initial COVID-19 declarations specified only the starting date of the disaster ("beginning on January 20, 2020") and did not specify an end date, instead referring to the disaster as "continuing." The Government dismisses the President's description of the

disaster as "continuing" and contends that the initial COVID-19 declarations specify January 20, 2020 as not only the "earliest incident date," but also as the "latest incident date." According to the Government, the mandatory tolling period of Section 7508A(d)(1) expired on March 20, 2020—sixty days after January 20, 2020, seven days after the President's first declaration was issued, and just as the entire nation was heading into its first "lockdowns."

The Government's interpretation is flawed for multiple reasons. First, it is contrary to the plain text of Section 7508A(d)(1), which refers simply to "the declaration" and does not limit itself to the *initial* declaration. A general reference to "the declaration" means the declaration *as amended*. This is particularly true where, as here, there was "longstanding administrative construction," *Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025), pursuant to which FEMA routinely amended "continuing" disaster declarations to specify the latest incident date.

Second, the Government's current litigating position is contrary to the IRS's *own understanding* of what Section 7508A(d)(1) means. In 2021, while the pandemic was still going on, the IRS promulgated a regulation stating that when FEMA amends a disaster declaration to specify the closing date of the disaster's incident period, then FEMA's amendment also specifies the "latest incident date" for purposes of Section 7508A(d)(1). While other portions of this IRS regulation were challenged and invalidated by the Tax Court, no one has successfully disputed the regulation's interpretation of "latest incident date"—because it is correct.

Third, the Government's contention that it is impossible for FEMA to amend the President's initial disaster declarations is contradicted by, among other things, (a) FEMA's regulations, (b) the initial declarations themselves, which expressly authorized FEMA "to make changes"; (c) FEMA's February 2023 notice setting the May 11, 2023 closing date, which states that "The amendments to the COVID-19 major disaster declarations are as follows . . .", and (d)

FEMA's legal reference manual, which documents FEMA's longstanding practice of "amending" disaster declarations to supply the closing date of the incident period. Indeed, even after the Government filed its motion to dismiss claiming that FEMA does not amend disaster declarations, FEMA has continued to do just that, including a raft of amendments published just last week.

As a last-ditch argument, the Government contends that, even if Plaintiffs' interpretation is right, the tolling period should nonetheless be limited to one year. This reading of Section 7508A(d)(1) has been correctly rejected by three courts, including 13 judges on the Tax Court in *Abdo v. Commissioner*, 162 T.C. 148 (2024), because it defies the plain meaning of the text.

The Court should reject the Government's interpretation and deny its motion to dismiss.

## BACKGROUND

### I. FEMA Routinely Amends "Continuing" Disaster Declarations to Specify Disasters' Latest Incident Dates, Pursuant to Presidential Delegations of Power

Section 321 of the Stafford Act (42 U.S.C. § 5164) authorizes the President to "prescribe" "rules and regulations as may be necessary and proper to carry out the provisions of this chapter . . . ." The President delegated this rulemaking power to FEMA in Section 1 of Executive Order 12673. *Delegation of Disaster Relief and Emergency Assistance Functions*, 54 Fed. Reg. 12,571 (Mar. 28, 1989) (publishing Executive Order 12673). Pursuant to that authority, FEMA has promulgated two regulations regarding the dates of disasters. One states:

> Eligibility for Federal assistance under this subpart is limited to losses or expenses resulting from damage that occurred during the dates of the incident period established in a presidential declaration . . . .

44 C.F.R. § 206.110(d). Another regulation confers power on FEMA to determine those dates:

> Incident period: The time interval during which the disaster-causing incident occurs. No Federal assistance under the Act shall be approved unless the damage or hardship to be alleviated resulted from the disaster-causing incident which took place during the incident period . . . . *The incident period will be established by FEMA in the FEMA–State Agreement and published in the Federal Register.*

44 C.F.R. § 206.32(f) (emphasis added).

In addition to those sources of FEMA's authority to specify the beginning and ending dates of disasters, Presidents also routinely include, in their initial declarations, a sentence "authoriz[ing]" FEMA to "make changes to this declaration for the approved assistance to the extent allowable under the Stafford Act." *See* App'x (citing nine examples from 2019 and earlier).[1]

When a disaster is ongoing at the time of the initial declaration, that declaration often does not specify an end date, but rather describes the disaster as "continuing." *See* App'x (examples). FEMA's legal reference manual confirms that "[w]hen the effects of the incident are ongoing, the initial declaration . . . may state that the incident period is 'continuing.'"[2]

FEMA's manual also explains that the agency, pursuant to its delegated authority, will later "amend[]" such a "continuing" declaration to specify the latest incident date of the disaster. After monitoring the situation and conferring with local officials, FEMA "establish[es] the closing date in an amendment to . . . the declaration," in a notice published in the Federal Register.[3] FEMA even has a "Declarations Unit in FEMA HQ" that "handles all amendments to the declaration."[4]

## II. 2019: The IRS's Failure to Provide Adequate Tax Relief Following Floods Prompts Congress to Mandate Tolling of Tax Deadlines During Federally Declared Disasters

The spring floods of 2019 were an "interconnected catastrophe along the Missouri, Mississippi and Arkansas Rivers."[5] *The New York Times* called these floods a "slow-motion

---

[1] Plaintiffs' Request for Judicial Notice explains why the Court should consider these citations and the other documents cited in this brief.
[2] Kirkpatrick Decl., Ex. A - FEMA, *Disaster Operations Legal Reference*, 3-41 (Version 3.0, Jan. 20, 2017), https://perma.cc/KU8G-R56G; *see also id.* 3-26 (giving example relating to a long-running flood disaster).
[3] *Id.* at 3-41; *see also* App'x (quoting nine examples of such amendments).
[4] *Id.* at 3-40.
[5] S. Almukhtar et al., *The Great Flood of 2019: A Complete Picture of a Slow-Motion Disaster*, NY Times (Sept. 11, 2019), https://www.nytimes.com/interactive/2019/09/11/us/midwest-flooding.html; *see generally* Plaintiffs' Request for Judicial Notice.

disaster" that "affected nearly 14 million people" from March until July 2019. According to FEMA, in 2019 the President declared 51 flood-related disasters.[6] Because the flooding was so prolonged, six of these declarations described the disaster as "continuing." *See* App'x (citations).

Although the IRS has long had discretionary power to grant taxpayers relief from deadlines during disasters, *see* 26 U.S.C. § 7508A(a),[7] the IRS failed to consistently exercise that authority in 2019 with respect to the six "continuing" flood declarations. For example, the IRS apparently issued no relief in connection with the Kansas declaration (FEMA-4449-DR), and for the Nebraska declaration (FEMA-4420-DR), the IRS's relief only lasted until 17 days after that disaster ended.[8]

On June 18, 2019—while the floods were still cresting—the Taxpayer Certainty and Disaster Tax Relief Act of 2019 was introduced to address the IRS's failure to provide adequate tax relief. That bill was later enacted in the Further Consolidated Appropriations Act, 2020.[9] Section 205 of the Act, codified as the new 26 U.S.C. § 7508A(d), automatically tolled all of the deadlines that the IRS had discretion to extend under its pre-existing authority in Section 7508A(a).

## III. 2020: The President Issues "Continuing" Declarations Relating to the COVID-19 Disaster, But the IRS Refuses to Apply Section 7508A(d)

On March 13, 2020, the President declared that the COVID-19 pandemic was a nationwide "emergency" under the Stafford Act (the "Emergency Declaration").[10] The Emergency Declaration described the emergency as "ongoing" and "exist[ing] nationwide." *Id.*

---

[6] *See* FEMA, *Disasters and Other Declarations*, https://www.fema.gov/disaster/declarations (last visited Nov. 10, 2026). Set "Year (Start)" to 2019, "Year (End)" to 2019, set "Declaration Type" to Major Disaster Declaration, and "Incident Type" to Flood.

[7] Section 7508A(a) was enacted in 1997. *See* Taxpayer Relief Act of 1997, Pub. L. No. 105–34, 111 Stat. 788 (1997).

[8] *See* IRS, News Release NE-2019-02 (Mar. 22, 2019), https://perma.cc/SY35-3BHM. This release granted "affected taxpayers until July 31, 2019, to file most tax returns." *Id.* This disaster ended just 17 days earlier on July 14, 2019. *See* App'x (FEMA-4420-DR).

[9] Pub. L. No. 116–94, div. Q, tit. II, §§ 201-208, 133 Stat. 2534, 3226-3247 (Dec. 20, 2019).

[10] Compl. ¶ 31 (citing Letter from President Donald J. Trump on Emergency Determination Under the Stafford Act (Mar. 13, 2020), available at https://perma.cc/N4HU-MQPK).

Beginning in mid-March 2020, the President issued separate "major disaster" declarations for all 50 states, the District of Columbia, and all U.S. territories (the "Stafford Act Disaster Declarations"). Compl. ¶ 32. The Stafford Act Disaster Declarations were substantively identical. *Id.* ¶ 33. They stated that the President had "determined that the emergency conditions . . . resulting from the Coronavirus Disease 2019 (COVID-19) pandemic beginning on January 20, 2020, and continuing, are of sufficient severity and magnitude to warrant a major disaster declaration."[11] They contained the standard delegation language: "Further, you [FEMA] are authorized to make changes to this declaration for the approved assistance to the extent allowable under the Stafford Act."[12]

Despite these declarations, the IRS did *not* grant taxpayers any of the mandatory relief that Section 7508A(d) required. Instead, the IRS provided only limited discretionary relief pursuant to Section 7508A(a). For example, it extended certain taxpayers' individual income tax filing deadlines from April 15 to July 15, 2020, and from April 15 to May 17, 2021. Compl. ¶¶ 37, 43. But these brief discretionary "grace periods" came nowhere close to the mandatory relief that Section 7508A(d) required, and they expired while the COVID-19 pandemic was still raging. *See* Compl. ¶ 45 (chart mapping the discretionary grace periods onto weekly COVID-19 death tolls).

## IV. 2021: The IRS Promulgates a Regulation Implementing Section 7508A(d)

In June 2021, the IRS adopted a regulation implementing Section 7508A(d). That regulation makes clear that Section 7508A(d)(1)'s mandatory tolling period, for a "continuing" disaster declaration, ends sixty days after the latest incident date that is specified in FEMA's *amendment* to the declaration. The IRS's regulation included, as "Example (3)", a situation in

---

[11] Compl. ¶ 33 (citing *New York; Major Disaster and Related Determinations*, 85 Fed. Reg. 20,702 (April 14, 2020)).
[12] *E.g.*, 85 Fed. Reg. 20,702.

which the President's initial declaration "specified August 15 as the earliest incident date and described the incident period as ongoing," and "FEMA subsequently amended the major disaster declaration to specify the latest incident date of November 19."[13] The IRS explained that when FEMA amends the declaration to specify the disaster's ending date, then "the mandatory 60-day postponement period . . . under Section 7508A(d) . . . ends 60 days after the latest incident date of November 19" that was specified in FEMA's amendment to the declaration.[14]

In late 2021, the IRS applied Example 3 to a real-life disaster: On August 24, 2021, the President declared California wildfires to be a disaster "beginning on July 14, 2021, and continuing[.]"[15] On November 10, FEMA amended that declaration, stating: "the incident period for this disaster is closed effective October 25, 2021."[16] Five days later, the IRS informed taxpayers that Section 7508A(d)'s mandatory period had been extended as a result of FEMA's amendment:

> The IRS is providing this additional relief, based on the recent Federal Emergency Management Agency (FEMA) decision to end the incident period for this disaster declaration on October 25. *By law, the IRS must provide disaster relief until at least 60 days after the end of the FEMA-designated incident period.*[17]

## V. 2021: Congress Amends Section 7508A(d) But Does Not Make the Amendment Retroactive

In late 2021, Congress amended Section 7508A(d). For future disasters, the amended version ends the mandatory tolling period "on the date which is 60 days after the later of . . . [the]

---

[13] *Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster*, 86 Fed. Reg. 31,146, 31,151 (June 11, 2021) (promulgating 26 C.F.R. § 301.7508A-1(g)(4)(iii)).

[14] *Id.* As described in the Complaint, a different part of the IRS's 2021 regulation was subsequently invalidated in *Abdo,* 162 T.C. at 168. *See* Compl. ¶¶ 48-50. The Government does not defend that part of the regulation in its motion to dismiss, and *Abdo* left untouched the part of the regulation, quoted here, that interpreted "latest incident date so specified" to mean the end date of the incident period provided by FEMA in an amendment to the President's initial "continuing" declaration.

[15] 86 Fed. Reg. 57,178, 57,179 (Oct. 14, 2021).

[16] 86 Fed. Reg. 71,512 (Dec. 16, 2021).

[17] IRS, News Release, IR-2021-224 (Nov. 15, 2021) (emphasis added), https://perma.cc/6UJ7-4VEC.

earliest incident date . . . or the date such declaration was issued."[18] This amendment was not retroactive.[19] The parties agree that "the 2019 version" of Section 7508A(d) "is the operative version for . . . the COVID-19 pandemic disaster." Gov't Br. at 6. Accordingly, unless otherwise stated, all references herein to Section 7508A(d) are to the 2019 version.

## VI. 2023: FEMA Amends the COVID-19 Disaster Declarations to Close the Disaster's Incident Period on May 11, 2023

Between March 2020 and February 2023, FEMA amended the COVID-19 disaster declarations numerous times.[20] Then, on February 10, 2023, FEMA published an omnibus notice in the Federal Register stating:

> Notice is hereby given that the incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023. . . . *The amendments to the COVID-19 major disaster declarations are as follows*: . . . .

88 Fed. Reg. 8,884 (Feb. 10, 2023) (emphasis added). FEMA's notice then listed each of the President's COVID-19 disaster declarations that FEMA was amending. *Id.* at 8,884-86.

## VII. 2024 to the Present: Courts Reject the Government's Efforts to Avoid Mandatory Tolling

In two recent cases, other courts have ruled that Section 7508A(d)(1) extended the deadlines of taxpayers affected by the COVID-19 declarations through at least July 10, 2023.

In *Kwong v. United States*, the taxpayer sued the Government in February 2023 seeking tax refunds. 179 Fed. Cl. 382, 384 (2025). The Government asserted that the taxpayer was too late: the statute of limitations expired in late 2022. The Court of Federal Claims held that the taxpayer's

---

[18] Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80501(a)(1), 135 Stat. 429, 1335 (Nov. 15, 2021).

[19] *Id.* § 80501(b), 135 Stat. 1335 ("EFFECTIVE DATE.—The amendment made by this section shall apply to federally declared disasters declared after the date of enactment of this Act.").

[20] *See, e.g.*, 86 Fed. Reg. 26,362 (May 4, 2022) (stating that "[t]he following list of declarations are amended" with respect to federal cost-sharing).

complaint was timely because "[u]nder the express text of [Section 7508A(d)(1)], the automatic extension lasted . . . until July 10, 2023 (60 days after its end date of May 11, 2023)." *Id.* at 388.

In *Singh v. United States*, the taxpayer sued for a refund, and the Government contended that the claim was barred by the statute of limitations. 2026 WL 2906665, at *5 (E.D.N.Y. Sept. 24, 2026). Judge Donnelly found that the taxpayer's claim was timely filed because, among other reasons, Section 7508A(d)(1) "extended her deadline to July 10, 2023." *Id.* at *9. Judge Donnelly concluded that FEMA's February 10, 2023 omnibus notice "expressly amended" the initial disaster declarations and "specified" the "latest incident date" as May 11, 2023. *Id.* at *9-*12.

## VIII. 2026: FEMA Continues to Amend Presidential Disaster Declarations

Even after the Government filed its motion to dismiss denying that FEMA amends disaster declarations, FEMA has continued its longstanding practice of doing exactly that. In an omnibus notice published just last week, FEMA announced "17 amendments to Presidential declarations of emergencies and major disasters."[21] FEMA explained that it "publishes in the Federal Register notices for declarations that communicate all the required information both upon the initial declaration by the President, *and when that information changes because a declaration is amended.*"[22] Three of the amendments, made by FEMA in this omnibus notice, provided closing dates for disasters that had been described, in the President's initial declarations, as "continuing."[23]

[21] *Notices of Emergency and Major Disaster Declarations and Related Amendments*, 91 Fed. Reg. 69,264 (Nov. 3, 2026).
[22] *Id.* (emphasis added).
[23] *See id.* (providing that the "incident period for this emergency is closed effective" on a certain date, for FEMA-3650-EM); *id.* at 69,266 (same for FEMA-4933-DR and FEMA-4935-DR). These disasters had been described by the President, in his initial declarations, as "continuing" disasters. *See* 91 Fed. Reg. 61,554, 61,558 (Sept. 29, 2026) (FEMA-3650-EM); 91 Fed. Reg. 55,964 (Aug. 31, 2026) (FEMA-4933-DR); 91 Fed. Reg. 57,421 (Sept. 9, 2026) (FEMA-4935-DR).

## LEGAL STANDARD

The Government's Rule 12(b)(6) motion must be denied because Plaintiffs' complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. FEMA's February 2023 Omnibus Notice Amended the COVID-19 Disaster Declarations

The initial COVID-19 disaster declarations did not specify "a latest incident date," and instead described the disaster as "continuing." Accordingly, consistent with FEMA's regulations and practices both before and after the enactment of Section 7508A(d), FEMA amended the initial declarations on February 10, 2023 to specify the "latest incident date" of May 11, 2023.

The Government claims on page 19 that "there is no reason to believe" that FEMA's February 10, 2023 omnibus notice "was meant to amend the Presidential disaster declarations." Of course there is; the omnibus notice itself says that it was amending the declarations: "*The amendments to the COVID-19 major disaster declarations are as follows*: . . . ." 88 Fed. Reg. 8,884 (Feb. 10, 2023) (emphasis added). And FEMA's own manual—the *Disaster Operations Legal Reference*—describes notices like this one as doing precisely this: amending the declarations. *Supra* note 2. On page 3-41, FEMA's manual explains that "[w]hen the effects of the incident are ongoing, the initial declaration . . . may state that the incident period is 'continuing.'" *Id*. If so, FEMA will later "establish the closing date *in an amendment to . . . the declaration* . . . ." *Id.* (emphasis added). Page 3-26 of the manual states that "FEMA closes the incident period *by amending the original declaration* . . . ." *Id.*

Just last week, FEMA published another omnibus notice making "17 amendments to Presidential declarations" to specify closing dates of "continuing" disasters. *Supra*, at 9.

FEMA is not the only agency that understands FEMA's notices to be "amendments" to the initial disaster declarations. The IRS also understood this when drafting its 2021 regulation. On January 13, 2021—while the COVID-19 disaster was still continuing—the IRS published a "notice of proposed rulemaking" explaining its proposed regulation.[24] That notice described how FEMA had "amended" the President's flood-related "continuing" disaster declarations in 2019: "FEMA later *amended the declarations* to provide an end date to the incident period for the disaster."[25]

## II. FEMA Was Authorized to Amend the COVID-19 Disaster Declarations

The Government's backup argument is that even if FEMA was purporting to amend the initial COVID-19 declarations, FEMA did not actually amend anything because "FEMA lacks authority" to do so. Gov't Br. at 20.

This too is incorrect. There are two sources of FEMA's authority to amend the initial declarations. First, the President delegated this authority to FEMA in the initial declarations. The initial declarations were all addressed to FEMA's Administrator, and each ended by stating: "Further, you are authorized to make changes to this declaration for the approved assistance to the extent allowable under the Stafford Act."[26] Closing an incident period is a change "for the approved assistance" because the incident period defines the causes of damage for which FEMA is authorized to provide assistance.[27] FEMA itself has stated that this delegation language

[24] *Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster*, 86 Fed. Reg. 2,607 (Jan. 13, 2021).
[25] *Id.* at 2,609 (emphasis added).
[26] *E.g.*, *New York; Major Disaster and Related Determinations*, 85 Fed. Reg. 20,702 (April 14, 2020). That is the same delegation language that routinely appears in initial disaster declarations; it, or something very like it, appears in each of the initial declarations cited in the Appendix.
[27] 44 C.F.R. § 206.32(f) ("No Federal assistance under the Act shall be approved unless the damage or hardship to be alleviated resulted from the disaster-causing incident which took place during the incident period . . . ."); *id.* § 206.110(d) ("Eligibility for Federal assistance under this subpart is limited to losses or expenses resulting from damage that occurred during the dates of the incident period . . . .").

authorizes it to make substantive changes to the scope of the initial declaration—even altering the geographic area of a disaster from what the President originally designated.[28]

The President also delegated authority to FEMA in Executive Order 12673. Section 1 of that Order delegated to FEMA all the President's Stafford Act responsibilities except for four discrete sections of that Act.[29] The Government on page 20 of its Brief notes that one of those four sections, which the Executive Order did not delegate to FEMA, is Section 401 (42 U.S.C. § 5170), which authorizes the President to declare a disaster. But Section 401—entitled "Procedure for Declaration"—addresses only the process by which a disaster is initially declared. It does not require the President to specify the dates of a disaster, it does not address amendments, and it says nothing about the incident period. So the exclusion of Section 401 from Executive Order 12673 says nothing about whether FEMA was delegated authority to amend declarations to specify the disaster's latest incident date.

The key provision of the Stafford Act, which Executive Order 12673 *did* delegate to FEMA, is Section 321 (42 U.S.C. § 5164). That Section authorizes the President to "prescribe . . . rules and regulations." Pursuant to this delegated authority, FEMA promulgated a regulation authorizing the agency to determine a disaster's "incident period." 44 C.F.R. § 206.32(f). Accordingly, even *without* the delegation language in the initial COVID-19 declarations, FEMA already had authority (under Executive Order 12673 and the regulation FEMA promulgated pursuant to it) to amend those declarations to specify the disaster's latest incident date.

---

[28] Congressional Research Service, FEMA's Individuals and Households Program (IHP)—Implementation and Considerations for Congress, at 21 (Mar. 3, 2025), https://perma.cc/JX8G-M9XW (quoting FEMA as interpreting this delegation language to "authorize[] FEMA to make changes to programs approved in the declaration (e.g., add counties)").
[29] 54 Fed. Reg. 12,571 (Mar. 23, 1989).

## III. Section 7508A(d) Refers to the Latest Incident Date Specified In the Declaration *as Amended*

### A. The Plain Meaning of "the Declaration" Includes Amendments

Section 7508A(d) of Title 26 provides:

(d) Mandatory 60-day extension.—

> (1) In general.—In the case of any qualified taxpayer, the period—
>
> > (A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to in paragraph (2) relates, and
> >
> > (B) ending on the date which is 60 days after the latest incident date so specified,

shall be disregarded in the same manner as a period specified under subsection (a).

The parties agree that "the earliest incident date specified in the declaration" is January 20, 2020. That is the date specified, in the President's initial declarations, as the "beginning" of the COVID-19 disaster. But when the President made those initial declarations in spring 2020, the pandemic had just begun and had no end in sight; he therefore did not provide any end date but instead described the disaster as "beginning on January 20, 2020, *and continuing*."[30] The Government argues that the word "continuing" "is not a date," and therefore January 20, 2020 is not only the "earliest incident date" but also "the latest incident date" specified in "the declaration." Gov't Br. at 11. Therefore, the Government concludes, the tolling period ended on March 20, 2020, while most of the nation was just entering "lockdowns."

The Government's interpretation is contrary to the plain statutory text. It asks this Court to rewrite subparagraph (d)(1)(A) by inserting more specific and limiting words, such as: "the **initial** declaration to which the disaster area referred to in paragraph (2) relates, **disregarding any**

[30] Compl. ¶ 33 (quoting New York; Major Disaster and Related Determinations, 85 Fed. Reg. 20,702 (April 14, 2020)) (emphasis added).

**subsequent amendments**." But this rewrite is *not* the plain and ordinary meaning of the text that Congress enacted. No court has ever adopted the Government's theory, and both courts to consider whether January 20, 2020 is the "latest incident date" have rejected that argument as well. *Kwong*, 179 Fed. Cl. at 388; *Singh*, 2026 WL 2906665, at *9-*12.

Courts routinely read statutory references to documents like executive "declarations" and judicial orders to include the document *as amended*. *See, e.g.*, *Lee v. United States*, 149 F.4th 981, 983-86 (8th Cir. 2025) (if a judgment is amended after it becomes final, the one-year deadline that runs from the "date on which the judgment of conviction becomes final" runs from the date of the amendment) (cleaned up); *G. & T. Terminal Packaging Co. v. Hawman*, 870 F.2d 77, 81 (2d Cir. 1989) (where a reparation order by the Secretary of Agriculture is amended, deadline to appeal runs from amended order). While not technically applicable because Section 7508A(d) does not cross-reference a statute, the logic underpinning the statutory "reference" canon is also instructive here. *See Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019) ("According to the 'reference' canon, when a statute refers to a general subject, the statute adopts the law on that subject as it exists whenever a question under the statute arises."); *see also El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161, 1164 (10th Cir. 2016) (statutory reference to "[t]he provisions of the Federal Rules of Civil Procedure" means the rules "as they are found on any given day, today included"). Given that "the declaration" is a general reference, and given that these declarations did not exist when Section 7508A(d) was enacted, the statute should not be interpreted as making a "static" reference to only the initial versions of the declarations. *Jam*, 586 U.S. at 207-08.

According to the Government's reasoning, the initial declaration would control even if the President personally amended it *the very next day* to specify a different incident date, or to correct an error. That makes little sense. Documents like declarations can and do change. The Executive

may obtain new information about an unfolding disaster that causes the Executive, or the agency to whom he delegates such authority, to amend the declaration. The statutory term "the declaration" is most naturally read to include the declaration as amended.

### B. The Government's Interpretation of 7508A(d) Leads to Absurd Results Because January 20, 2020 Is Not "the Latest Incident Date"

COVID-19 was not a one-day disaster. The President's initial declarations expressly referred to January 20, 2020 as the "beginning," and the disaster as "continuing." No reasonable person would read a declaration dated March 20, which describes a disaster as "continuing," to be specifying a "latest incident date" of January 20. *See Kwong*, 179 Fed. Cl. at 388 ("If the emergency declaration was intended to include only January 20, 2020, the declaration would not have also said, 'and continuing.'. . . The government's choice to maintain the disaster declaration beyond January 20, 2020, has meaning."); *Singh*, 2026 WL 2906665, at *10 ("But even if the Court did not consider the effect of this [FEMA] amendment, it would still find that the extension must be longer than 60 days after January 20, 2020.").

Therefore, if the Government were correct that FEMA's amendments must be ignored, the result would be that the tolling period continues through the present and onward into the future, forever, because the President's initial declarations did not specify a "latest incident date." The absurdity of that result confirms that the Government's interpretation of Section 7508A(d)(1), as referring solely to the initial declaration without regard to later amendments, is wrong. *See United States v. Venturella*, 391 F.3d 120, 126 (2d Cir. 2004) ("A statute should be interpreted in a way that avoids absurd results.") (cleaned up).

### C. The Statutory Context Confirms that "the Declaration" Means the Declaration as Amended

To "ascertain" the "plain meaning" of the term "the declaration," the Court considers not only the meaning of that word in isolation but also "the specific context in which that language is

used, and the broader context of the statute as a whole." *In re Soussis*, 136 F.4th 415, 427, 428 (2d Cir. 2025) (cleaned up). Here, the "broader context" includes, most importantly, the Stafford Act.

The Stafford Act does not require the President to put *any* date in his declaration. *See* 42 U.S.C. § 5170. All the Act requires is that the President declare that a disaster exists and is "of such severity and magnitude . . . that Federal assistance is necessary." *Id.* § 5170(a). Because the Stafford Act does not require the President to include any dates in his initial declaration, Congress's reference to the "earliest incident date" and "latest incident date" "specified" in "the declaration" must be read to include dates supplied in amendments.

The Government contends on pages 17-18 of its Brief that Congress must have intended Section 7508A(d)(1) to refer to the dates specified in the initial disaster declaration, rather than any later amendment, because Congress used the term "incident period" in other parts of the Taxpayer Certainty and Disaster Tax Relief Act, but used different words in Section 7508A(d) ("earliest incident date" and "latest incident date") to indicate the same concept (the duration of the disaster). Because the words are different, the Government argues, Congress cannot have intended "earliest incident date" and "latest incident date" to mean the obvious: the beginning date of the incident period and the ending date of the incident period.

The Government is wrong because "there is no 'canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing.'" *Jennings v. Rodriguez*, 583 U.S. 281, 302-03 (2018) ("declin[ing] to invent and apply such a canon," and holding that statutory provision mandating detention "for" a proceeding means the same thing as provisions mandating detention "pending" a proceeding or "until" a certain point) (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013)). The authorities that the Government cites all considered statutory text that was very different from the provisions of the

Act at issue here. The Government's cases involved statutory provisions that were nearly identical in wording, except that one provision contained an additional limiter that the other did not. *E.g.*, *Patel v. Garland*, 596 U.S. 328, 341–42 (2022) (statute forbidding judicial review of "any judgment" was sufficiently different, from statute forbidding judicial review of "The Attorney General's *discretionary judgment*," to indicate that Congress intended a different and broader prohibition) (cleaned up; emphasis in original); *Salinas v. United States R.R. Ret. Bd.*, 592 U.S. 188, 196 (2021) (statute providing for judicial review of "*any* final decision" of the Board was sufficiently different from statute providing for judicial review of "a final decision under subsection (c)" to indicate that Congress intended a different and broader scope of review) (cleaned up; emphasis added); *Russello v. United States*, 464 U.S. 16, 22–23 (1983) (section 1963(a)(*1*) of RICO statute, providing for forfeiture of "any interest . . . acquired" in violation of RICO, was sufficiently different from Section 1963(a)(*2*) of RICO, providing for forfeiture of "any interest in . . . *any enterprise*," to indicate that the former provision was not limited to interests in "an enterprise" but was instead broader in scope) (emphasis added).

Unlike those statutes, there is nothing to suggest that "earliest incident date" and "latest incident date" mean anything besides the obvious: the start date and end date of the incident period. That Congress chose to use the synonymous term "last day of such incident period," elsewhere in the Taxpayer Certainty and Disaster Tax Relief Act,[31] does not prove that "latest incident date" should be ascribed some different meaning in Section 7508A(d)(1). *See Jennings*, 583 U.S. at 303.

---

[31] Pub. L. No. 116-94, div. Q, tit. II, § 202(b)(2)(C), 133 Stat. 3239 (codified at 26 U.S.C. § 72(p)(6)(B)(i)).

If Congress had intended Section 7508A(d)(1) to refer to something other than the earliest and latest dates of the incident period, then Congress would have said so.[32]

## IV. The Relevant Interpretive Tools and Canons Confirm Plaintiffs' Interpretation

Even if the Court were to find ambiguity in Section 7508A(d)(1)'s text as to whether Congress intended to refer to the initial "declaration" or to the declaration as amended, there are two independent canons of statutory interpretation that would resolve that ambiguity. Both point decisively in favor of Plaintiffs' interpretation. By contrast, the Government's cited canon—the "major questions doctrine"—does not apply.

### A. The Government's Interpretation Would Drastically Depart from Longstanding Administrative Practice

As the Supreme Court recently explained: "When Congress adopts a new law against the backdrop of a longstanding administrative construction," courts "generally presume[] the new provision should be understood to work in harmony with what has come before." *Monsalvo*, 604 U.S. at 725 (cleaned up) (immigration-law statutory deadline of "60 days" was interpreted to mean 61 days, or even 62 or 63 days, if the 60th day fell "on a weekend or legal holiday," since that was the "specialized meaning" of "days" used in immigration regulations at the time Congress enacted the statute); *see also Atkins v. Parker*, 472 U.S. 115, 125–26 (1985) (Congress presumed to be aware of "then-existing regulations" governing "notice" requirements to food-stamp recipients).

[32] In footnote 10 on page 13 of its Brief, the Government contends that the heading of Section 7508A(d)—"Mandatory 60-day extension"—"demonstrates that Congress intended a limited and defined postponement period, not an indefinite one." It does not. The parties agree that Section 7508A(d)(1) mandates a "60-day extension" from the "latest incident date" that is "specified in the declaration," and that the total period is often greater than 60 days. The heading is thus irrelevant to the dispute here, which is about whether the "latest incident date" must be specified in the initial declaration or whether, instead, the "latest incident date" may be supplied in an amendment to the declaration. Put another way: the heading "refers to the mandatory minimum extension, not the maximum possible extension." *Singh*, 2026 WL 2906665, at *11.

This is a "venerable canon of construction." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 114 (2d Cir. 2017). "[W]hen a statute does not provide clear direction, it is more likely that Congress was adopting, rather than departing from, established assumptions about how our legal or administrative system works." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,* 760 F.3d 151, 166 (2d Cir. 2014). And "[t]his presumption is particularly appropriate when the new legislation invokes and builds off an existing statutory framework." *Internal Revenue Serv. v. Murphy*, 892 F.3d 29, 35 (1st Cir. 2018).

When Congress enacted Section 7508A(d)(1) in 2019, there was already in place a "longstanding administrative construction," *Monsalvo*, 604 U.S. at 725, of Stafford Act disaster declarations. FEMA had an established set of regulations and a detailed *Disasters Operations Legal Reference* manual governing the way in which a disaster's start date and end date would be established and the declaration would be amended by FEMA. *Supra*, at 3-4; *see also* 44 C.F.R. § 206.32(f). FEMA did precisely this in 2019, during Congress's consideration of the Taxpayer Certainty and Disaster Tax Relief Act, when FEMA amended six "continuing" flood declarations to specify the ending dates of those disasters. *Supra*, at 4-5.

Given this established administrative practice, the Government's argument on page 13, that "Congress conspicuously made no special provision for ['continuing'] declarations," has it backwards. If Congress had intended to depart from FEMA's longstanding practice of amending declarations to specify ending dates, or if Congress had intended to treat all "continuing" disasters as one-day disasters, it was incumbent on Congress to give a "clear indication" "that such a meaning was intended." *Nat. Res. Def. Council*, 760 F.3d at 166. This is particularly true given how counter-intuitive the practical implications of the Government's interpretation are: under the Government's interpretation, a two-day disaster would be entitled to a *longer* tolling period than a

"continuing" disaster like COVID-19, which had been ongoing for two months at the time the President issued the initial disaster declarations. There is nothing in the text to suggest that Congress intended to give the shortest possible tolling period to the longest, "continuing" disasters. Had Congress desired such a counter-intuitive result, which is so obviously at odds with FEMA's longstanding administrative practice, then Congress would have said so.

### B. The IRS's Contemporaneous Understanding Confirms that Plaintiffs' Interpretation is Correct

A second "well-worn interpretive tool" to determine Congress's meaning is to "look to the IRS's contemporaneous understanding of the statute." *Safdieh v. Comm'r of Internal Revenue*, 169 F.4th 102, 108 n.31 (2d Cir. 2026). The IRS's implementing regulation is relevant, not because of any *Chevron* deference, but rather because "what the law meant to its intended audience at the time of enactment" is "evidence of its original meaning." *Id.* In *Safdieh*, the Second Circuit relied on the IRS's "view of the statute" to confirm the statute's meaning. *Id.* at 108.

The IRS's 2021 regulation demonstrates that the IRS understood the statutory term "declaration" to refer, not to the initial declaration made by the President, but rather to the declaration as amended by FEMA. Example (3) in the final regulation expressly states that when "FEMA subsequently amend[s] the major disaster declaration to specify the latest incident date," Section 7508A(d)(1)'s mandatory tolling period "ends 60 days after the latest incident date" specified in FEMA's amendment. 86 Fed. Reg. 31,146, 31,151 (June 11, 2021).

The IRS then applied this understanding, in November 2021, to a California wildfire disaster whose initial declaration described it as "continuing," and whose ending date was later specified by FEMA. *Supra*, at 7. The IRS wrote in a news release, referring to Section

7508A(d)(1), that "[b]y law, the IRS must provide disaster relief until at least 60 days after the end of the FEMA-designated incident period."[33]

### C. The "Major Questions" Doctrine Does Not Apply

Pursuant to the "major questions" doctrine, the Supreme Court has "expressed 'reluctan[ce] to read into ambiguous statutory text' extraordinary delegations of Congress's powers." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 242 (2026) (quoting *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)). The doctrine applies where an executive agency asserts a "transformative expansion in its regulatory authority" or a "highly consequential power beyond what Congress could reasonably be understood to have granted" it. *West Virginia*, 597 U.S. at 721–24 (cleaned up).

The Government contends on page 23 that Plaintiffs' interpretation would "run afoul of the major questions doctrine" by giving FEMA's Administrator "greater power over tax administration than the Secretary of the Treasury." This is not correct. FEMA's authority remains what it always has been: to specify disasters' incident periods. The *consequences* of FEMA's decisions, for tax deadlines, follow automatically from Section 7508A(d)(1). These consequences are not an additional power that the Executive—or FEMA—is arrogating to itself. As the court in *Singh* noted:

> By its plain terms, Section 7508A(d) does not delegate any of Congress's powers; it is self-executing. The statute automatically grants taxpayers an extension by reference to the executive's authority to issue declarations that define the beginning and end of major disasters . . . .

2026 WL 2906665, at *12.[34]

[33] *Supra* note 17.

[34] The Government also contends that "Congress gave only one federal official any authority in Section 7508A—the Secretary of the Treasury . . . ." Br. at 23. That is wrong even under the Government's interpretation, as the President clearly has authority to set the earliest and latest incident dates in the declaration. He, in turn, delegated that authority to FEMA, as is his right.

The "major questions" canon is also inapplicable because the power delegated to FEMA's Administrator remains under the President's control. *See generally Trump v. Slaughter*, 609 U.S. 422, 433 (2026) As *Kwong* noted, "the executive branch is supposed to work together; concerns that one agency will make policy for another should be worked out within the executive branch," 179 Fed. Cl. at 389—not by courts applying the major questions doctrine.

## V. The Legislative History Supports Plaintiffs' Interpretation of Section 7508A(d)

Because the canons of statutory construction resolve any ambiguity in the statutory text, there is no need to rely on legislative history. *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). But in any event the legislative history—such as it is—supports Plaintiffs' interpretation.

The House Ways and Means Committee Report contains just one sentence stating the purpose of Section 7508A(d), under the header "REASONS FOR CHANGE":

> The Committee believes that the certainty and additional time provided by an automatic extension of filing deadlines for taxpayers affected by Federally declared disasters will ease the burden of tax compliance for taxpayers dealing with the hardship of disaster recovery.[35]

The Government plucks the word "certainty" from this passage and contends that its interpretation would "provide[]" "certainty" by "allowing taxpayers to know both the beginning and the end of the mandatory postponement period as soon as the relevant declaration is made." Gov't Br. at 21-22. But that reasoning replaces "certainty" with "immediacy." The Committee Report indicates a desire to give taxpayers a certain deadline, not an immediate one. Plaintiffs' reading equally provides "certainty": taxpayers are certain that their deadlines remain tolled during a "continuing" disaster (because the initial declaration did not specify a "latest incident date"). Taxpayers are also certain that they will learn the ending date of the tolling period once FEMA

[35] H.R. Rep. No. 116-379, at 99 (Jan. 21, 2020).

amends the initial "continuing" declaration to specify the incident period's ending date, as FEMA has always done pursuant to its reference manual and regulations. If anything, the Government's interpretation creates confusion rather than certainty, by subjecting taxpayers to two different "incident periods"—one for Section 7508A(d) and one for all other forms of disaster relief.

The Committee Report's description of Section 7508A(d)'s purpose also expresses Congress's intent to "ease the burden of tax compliance for taxpayers *dealing with the hardship of disaster recovery*." H.R. Rep. No. 116-379, at 99 (emphasis added). The Government's interpretation would do just the opposite. It would end the mandatory tolling period *during the disaster itself*—even before the "disaster recovery" phase—and would impose the shortest possible tolling period on the most prolonged disasters.

The Government also contends that the 2021 Amendment to Section 7508A,[36] for which there is virtually no legislative history, "supports the Government's position." Gov't Br. at 15. The Government speculates that the 2021 Amendment was "likely directed at ensuring that postponements for future disasters would provide prospective (*i.e.*, post-declaration) relief, not at fixing a nonexistent flaw allowing for indefinite postponements." *Id.* at 21. This kind of speculation is a "hazardous basis for inferring" Congress's "intent," in 2019, when enacting the version of Section 7508A(d) that is at issue in this case. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117, 118 n.13 (1980) (giving no weight to later legislative history).

The Government's speculation about Congress's 2021 motives also makes no sense given the IRS's then-effective interpretation and implementation of the earlier version of Section 7508A(d). *Atkins*, 472 U.S. at 125–26 (Congress presumed to be aware of "then-existing

[36] Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80501, 135 Stat. 429, 1335 (Nov. 15, 2021).

regulations”). As discussed above, what the Government now calls a “nonexistent flaw” in the earlier version was very much “existent”: the IRS’s 2021 regulation established that mandatory tolling ended 60 days after the closing incident date supplied by FEMA’s amendment. *See supra*, at 7 (discussing Example 3). Therefore, to the extent that anything at all can be inferred from the 2021 Amendment, the inference must be that the IRS’s 2021 interpretation of “latest incident date so specified” should continue to apply to disasters that were declared prior to the 2021 Amendment, including “continuing” disasters like COVID-19.

## VI. Section 7508A(d)’s Mandatory Tolling Period Is Not Limited to One Year

The Government lastly contends that Section 7508A(d)(1)’s mandatory tolling period cannot exceed one year because the statute states that this mandatory period “shall be disregarded in the same manner as a period specified under subsection (a).” Subsection (a), in turn, gives the Secretary of the Treasury discretionary power to disregard “a period of up to 1 year.” 26 U.S.C. § 7508A(a). The Government argues, in effect, that “disregarded in the same manner as a period specified under subsection (a)” means the same thing as “subject to the one-year limitation of subsection (a).” *See* Gov’t Br. at 24.

This argument contradicts the plain meaning of “in the same manner as.” In ordinary usage, doing something “in the same manner” as something else means doing it the same *way*, not for the same length of time. The statutory phrase thus tells the IRS what to do with the subsection (d) period: Disregard it in deciding whether a filing was late, or how much interest is owed, just as the IRS would disregard a subsection (a) period. The one-year limit is not part of that “manner,” but instead is an outer limit on the Secretary’s discretionary authority. *See Abdo*, 162 T.C. at 165.

The Government’s interpretation also violates the canon of “the specific governs the general.” *United States v. Liounis*, 179 F.4th 124, 130 (2d Cir. 2026). Section 7508A(d)(1) contains specific language describing how to calculate the period of time that “shall be disregarded.”

According to that specific language, the period ends "on the date which is 60 days after the latest incident date so specified." This specific command governs the general phrase "in the same manner as a period specified under subsection (a)."

The Government cites *NFIB v. Sebelius*, 567 U.S. 519 (2012), but that case supports Plaintiffs' position. There, the Supreme Court read "in the same manner" narrowly. The statute directed that a penalty be "assessed and collected in the same manner" as taxes. The Court limited that directive to the Tax Code's assessment and collection procedures, and refused to read it as importing other Tax Code provisions. *Id.* at 545-46.

**CONCLUSION AND REQUEST FOR LEAVE TO AMEND**

For the foregoing reasons, the Court should DENY the motion to dismiss. In the event that the Court grants the Government's motion, leave to amend should be granted because, even under the Government's current interpretation of Section 7508A, the Government did not provide the required tax relief. Specifically, while the Government argues that the mandatory tolling period should be limited to 61 days or, in the alternative, one year, the Government did not pay the required interest under either of those interpretations. Plaintiffs should be granted leave to amend pursuant to Rules 15 and 20 to join additional taxpayers who would be owed interest under the Government's interpretations. *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir. 1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.").

Dated: November 10, 2026

Respectfully submitted,

*<u>/s/ Steven M. Shepard</u>*__________
Ryan C. Kirkpatrick
Steven M. Shepard
Zachary B. Savage
Casen B. Ross

SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: 212-336-8330
Facsimile: 212-336-8340
rkirkpatrick@susmangodfrey.com
sshepard@susmangodfrey.com
zsavage@susmangodfrey.com
cbross@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: 310-789-3100
Facsimile: 310-789-3150
ssklaver@susmangodfrey.com

Jonathan L. Holbrook (*pro hac vice*)
Spencer F. Walters (*pro hac vice*)
IVINS, PHILLIPS & BARKER, CHARTERED
1717 K Street, N.W.
Suite 600
Washington, D.C. 20006
Telephone: (202) 393-7600
Facsimile: (202) 393-7601
jholbrook@ipbtax.com
swalters@ipbtax.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF PAGE-LIMIT COMPLIANCE

Pursuant to this Court's individual rules, I certify that this memorandum complies with the 25-page limitation. As measured by the word processing system used to prepare it, this memorandum contains 8,182 words (excluding the Appendix).

*/s/ Steven M. Shepard*
Steven M. Shepard

## CERTIFICATION REGARDING AI USE

The undersigned, counsel of record for Plaintiffs, certifies that generative AI was not used to generate any portion of this brief. For full transparency, AI services (specifically Harvey and Clearbrief) were used as secondary cite-checking tools and to identify any potential typographical errors before filing, but any suggested changes were then manually reviewed and confirmed against the source material.

*/s/ Ryan C. Kirkpatrick*
Ryan C. Kirkpatrick

## APPENDIX: EXAMPLES OF FEMA AMENDMENTS TO DISASTER DECLARATIONS

The following chart contains just some of the many examples of initial disaster declarations that stated the disaster was "continuing," and whose ending dates were established by later FEMA amendments. This happened *six times* in 2019—the year of enactment of Section 7508A(d):

| Disaster | Initial Presidential Declaration | FEMA Amendment to the Declaration |
|---|---|---|
| Texas, FEMA-1624-DR | "extreme wildfire threat beginning on December 1, 2005, and continuing"[37] | "Notice is hereby given that the incident period for this disaster is closed effective May 14, 2006."[38] |
| New York, FEMA-3328-EM | "emergency conditions in certain areas of the State of New York resulting from Hurricane Irene beginning on August 25, 2011, and continuing,"[39] | "Notice is hereby given that the incident period for this emergency is closed effective September 5, 2011."[40] |
| Louisiana, FEMA-3347-EM | "emergency conditions in certain areas of the State of Louisiana resulting from Tropical Storm Isaac beginning on August 26, 2012, and continuing"[41] | "Notice is hereby given that the incident period for this emergency is closed effective September 10, 2012."[42] |
| Nebraska, FEMA-4420-DR | "a severe winter storm, straightline winds, and flooding beginning on March 9, 2019, and continuing,"[43] | "Notice is hereby given that the incident period for this declared disaster is now March 9, 2019, through and including July 14, 2019."[44] |
| Iowa, FEMA-4421-DR | "severe storms and flooding beginning on March 12, 2019, and continuing"[45] | "Notice is hereby given that the incident period for this declared disaster is now |

[37] 71 Fed. Reg. 4930 (Jan. 30, 2006).
[38] 71 Fed. Reg. 30,687 (May 30, 2006).
[39] 76 Fed. Reg. 60,513 (Sept. 29, 2011).
[40] 76 Fed. Reg. 58,026 (Sept. 19, 2011).
[41] 77 Fed. Reg. 54,599 (Sept. 5, 2012).
[42] 77 Fed. Reg. 57,574 (Sept. 18, 2012).
[43] 84 Fed. Reg. 13,678, 13,679 (Apr. 5, 2019).
[44] 84 Fed. Reg. 46,028 (Sept. 3, 2019).
[45] 84 Fed. Reg. 13,685 (Apr. 5, 2019).

| Disaster | Initial Presidential Declaration | FEMA Amendment to the Declaration |
|---|---|---|
| | | March 12, 2019, through and including June 15, 2019"[46] |
| Oklahoma, FEMA-4438-DR | "severe storms, straight-line winds, tornadoes, and flooding beginning on May 7, 2019, and continuing,"[47] | "Notice is hereby given that the incident period for this disaster is closed effective June 9, 2019."[48] |
| Arkansas, FEMA-4441-DR | "severe storms and flooding beginning on May 21, 2019, and continuing,"[49] | "Notice is hereby given that the incident period for this disaster is closed effective June 14, 2019."[50] |
| Kansas, FEMA-4449-DR | "severe storms, straight-line winds, tornadoes, flooding, landslides, and mudslides beginning on April 28, 2019, and continuing,"[51] | "Notice is hereby given that the incident period for this disaster is closed effective July 12, 2019."[52] |
| Missouri, FEMA-4451-DR | "severe storms, tornadoes, and flooding beginning on April 29, 2019, and continuing,"[53] | "Notice is hereby given that the incident period for this disaster is closed effective July 5, 2019."[54] |

All of the initial Presidential declarations, quoted above, ended with a delegation of authority to the FEMA Administrator identical or very similar to the following: "Further, you are authorized to make changes to this declaration for the approved assistance to the extent allowable under the Stafford Act."

[46] 84 Fed. Reg. 32,755 (July 9, 2019).
[47] 84 Fed. Reg. 32,760 (July 9, 2019).
[48] 84 Fed. Reg. 32,767 (July 9, 2019).
[49] 84 Fed. Reg. 32,759 (July 9, 2019).
[50] 84 Fed. Reg. 32,760 (July 9, 2019).
[51] 84 Fed. Reg. 38,283 (Aug. 6, 2019).
[52] 84 Fed. Reg. 38,275, at 38,276 (Aug. 6, 2019).
[53] 84 Fed. Reg. 38,282 (Aug. 6, 2019).
[54] 84 Fed. Reg. 38,275 (Aug. 6, 2019).